IN RE ESTATE OF ROBERT POWERS.

W. A. HOGAN, Appellee, v. J. W. CONMEY, Administrator, Appellant.

April 3, 1928.

C. J. Cash and Park Chamberlain, for appellant.

Doxsee & Doxsee and George C. Gorman, for appellee.

Morling, J.—The arguments revolve around an agreement for arbitration made between the intestate and the claimant, dated June 26, 1916, and the proceedings thereunder, particularly an agreement of settlement dated July 11, 1916.  By the agreement of arbitration, all claims and demands which either party had against the other, whether barred by the statute of limitations or not, were submitted to arbitrators.  The parties filed formal statements of their claims, and proceeded with the hearing before the arbitrators July 7, 1916.   On July 11, 1916, they executed the following agreement:

"   *   *   *   That the said matters in controversy as submitted to this board of arbitrators in the articles of agreement of arbitration are settled and determined between the parties as follows:

"The said Robert Powers [intestate] agrees to pay to the said W. A. Hogan [claimant] the sum of four thousand dollars ($4,000.00) to be paid as follows, to wit:   Two thousand dollars ($2,000.00) on or before the fifteenth day of July, 1916, and two thousand dollars ($2,000.00) within sixty (60) days from said date, without interest; and it is further agreed that the said W. A. Hogan may continue to occupy the house in controversy for a period of sixty (60) days from the fifteenth

day of July, 1916, or until said second two thousand dollars ($2,000.00) is paid, and shall have a lien on the said property for the payment of the said sum. The said Robert Powers is to pay the costs of this proceeding  *  *  *  The said arbitrators are to retain this stipulation attached to their finding and made a part thereof until the September term of the district court, 1916, and if said award is fully complied with before the convening of said court, then same is to be destroyed; and if same has not then been complied with shall be filed with the court and judgment entered as provided in the articles of submission.

"It is further agreed that the said W. A. Hogan upon the payment to him of the amount required in this contract shall either release, or secure the release, of a certain mortgage which he holds against the property at issue; it being a mortgage given by Robert Powers to Peter Kiene and assigned by him to one Kraus, and by him assigned to C. L. Niles, it not being known now whether C. L. Niles made an assignment thereof to W. A. Hogan, and the release will therefore have to come from the one in whose name the mortgage now stands."

The arbitrators on the same date attached the agreement of settlement to their report, which proceeded:

"The arbitrators therefore find that there is due to W. A. Hogan the amounts as set out in said stipulation, and that the same should be paid at the times and in the manner therein set forth, and that said W. A. Hogan shall have a lien on the real estate described in the pleadings in accordance with said stipulation and the cost as therein set forth.

"It is further agreed between the parties that this report of the arbitrators shall not be filed until the first day of the September term, 1916, of the district court of Jones County, Iowa, and not to be filed at all in case the terms of said stipulation are complied with."

The payments were not made, as required by the agreement of settlement. The arbitration papers were never filed in the district court, but were retained in the possession of the arbitrators,—for what reason does not appear. Intestate did, on January 4, 1917, pay to claimant $2,000, but made no further payments. He died December 26, 1925. The claim now before us was filed on July 21, 1926, and was originally both on open

account for $26,441.64, and in a separate count for the $2,000 of principal and the unpaid interest required by the stipulation. Claimant first alleged that the arbitration papers were lost. The papers were discovered, however, shortly before the trial, and produced.

The claimant now rests his case upon the agreement of settlement of July 11, 1916. The administrator's statement of errors relied upon is, in substance:

I. That the agreement of July 11, 1916, was not a new contract, but was no more than an admission, which merely tolled the statute of limitations on the previously existing account, and that, as an action on the account would be barred in five years, the statute of limitations at the end of five years from the agreement of settlement again came into full operation, and barred any action against intestate.

II. That the proceedings for arbitration were in full compliance with the statute, and provided the parties with an exclusive remedy, so that neither could begin an independent "action on the same claims and demands."

III. That there was no proof of any claim against the estate, but only "proof that certain demands and claims had been fully presented and adjudicated more than ten years before, in a full statutory arbitration. That no action could be maintained on such statutory award. That the claim appears on its face to be fully barred."

The administrator argues that an action on a non-statutory award is barred in five years; that claimant should have notified the arbitrators that the claim was not fully paid within 60 days, and his cause of action has been abandoned; that, under the statute, the award was void because not filed within one year; that claimant elected to accept the award and the statutory remedy thereon, and having lost that, has no remedy by independent action. As we understand his argument, it is also that the agreement of July 11, 1916, was, in legal effect, merely an offer of compromise, which had to be accepted and carried into effect in the manner provided, or not at all.

The agreement of July 11, 1916, is as to the obligation of the deceased to pay claimant the $4,000, and the time and manner of payment positive, clear, and specific. There is no contention that claimant did not comply with his agreement to re-

lease the mortgage, or that he otherwise failed in the performance of the agreement of settlement, except that neither party filed the award.

We are referred to no principle or authority which would prevent the parties to the arbitration proceedings from settling their affairs in their own way, or that would render such a settlement a nullity and ineffectual. The agreement is not merely an acknowledgment of the existence of an indebtedness. It is a positive and specific agreement on the part of intestate to pay. It is not claimed that no dispute in fact existed, or that the previous claim of either party was acknowledged and admitted, and the agreement therefore was without consideration. The parties were, in good faith, arbitrating actual differences. The settlement of those differences was a good consideration, of itself sufficient to support the intestate's agreement to pay the money. The agreement of settlement superseded all of the agreements, express and implied, between the parties theretofore existing, which they had submitted to arbitration. It superseded the arbitration agreement; for the arbitrators were given no discretion to ignore the agreement, or to make an award inconsistent with it, or to impose on either party obligations other or different than those which he assumed in the execution of the agreement. If intestate had given to claimant his promissory notes for the two $2,000 payments, we think it could not have been successfully urged that he would not have been liable to action upon the notes. If intestate had died before either of the payments became due, probably no one would dispute the liability of the estate upon the agreement. The filing of the arbitration papers and an award against a dead man would have been an utter futility. The contract was in writing, and the statute of limitations did not run until the expiration of ten years from the required dates of payment. It is not contended that, if the contract in question is a written contract, within the meaning of the statute of limitations, the action is barred. The arbitrators were the agents of both parties, and neither can take advantage of their failure to file the award. Both apparently acquiesced in its not being filed; for intestate paid, and claimant accepted, $2,000 several months after default in making both payments. It will be noticed by the report of the arbitrators that it was agreed that it should not be filed if the terms of the

stipulation were complied with. It is not to be assumed that the arbitrators violated their duty in not filing the proceedings, but rather, that the non-filing resulted, if not from the request, at least with the acquiescence, of the parties. There is nothing to show that either party ever repudiated the agreement of settlement or abandoned it. Intestate was a priest, and this may account for the seeming mutual disposition of both sides to let the matter rest without action. Doubtless either party might have filed the arbitration papers, and might have proceeded for judgment accordingly. On what procedure, we need not discuss. The agreement, however, to release the mortgage is not self-explanatory, and judgment could not be entered upon it without further information. Neither the agreement of submission nor the stipulation of settlement fixed the time within which the award was to be made; and therefore, to be valid as an award, it would, under Section 12703, Code of 1927, have to be filed within one year from the date of the agreement of submission. Not having been so filed, it, as an award, became a nullity. *Wilkinson v. Prichard*, 145 Iowa 65. If the proceedings for arbitration had complied with the statutory requirements, and had been pursued to the end, and an award made and filed with the clerk of the court, claimant would be precluded from maintaining an independent action. *Older v. Quinn*, 89 Iowa 445. We discover no reason, however, why the parties might not make the contract of settlement which they did make, and bind the intestate thereby to the payment of the money which he agreed to pay. We are of the opinion that the provision for judgment was intended to be merely cumulative and optional, and not exclusive. It was apparently so treated. The substance and essential part of the settlement was the fixing of intestate's obligation at $4,000, and his absolute, unconditional covenant to pay. He has not paid (except $2,000), and we discover no legal or moral reason why his estate should not now be required to pay.—*Affirmed.*

STEVENS, C. J., and EVANS, DE GRAFF, ALBERT, KINDIG, and WAGNER, JJ., concur.