**Carolyn JOHNSON, Appellant,**

v.

**FIREMAN'S FUND INSURANCE COMPANY, Appellee.**

**No. 60931.**

Supreme Court of Iowa.

Dec. 20, 1978.

Beving, Swanson & Forrest by Charles S. Crook, III, Des Moines, for appellant.

Jones, Hoffman & Davison, Des Moines, for appellee.

McCORMICK, Justice.

The trial court sustained defendant's motion to dismiss plaintiff's petition on the ground she did not submit her uninsured motorist claim to arbitration before bringing suit on it. We hold that arbitration was not a condition precedent to her action. Therefore we reverse and remand.

Plaintiff Carolyn M. Johnson filed a petition in three counts seeking recovery from defendant Fireman's Fund Insurance Company on its uninsured motorist coverage of Dave Ostrem Imports, Inc. She alleged she was an insured under the policy while operating a vehicle owned by Ostrem which was struck by one driven by an uninsured motorist. She asserted the negligence of the uninsured motorist proximately caused injuries for which she is entitled to recover damages under the uninsured motorist endorsement of the Fireman's Fund policy. She recited that Fireman's Fund refused to pay her claim on the ground the matter

would have to be arbitrated but that, despite her written demand for arbitration, Fireman's Fund failed to put the arbitration process in motion.

In the first count of the petition she asked $10,000 under the uninsured motorist coverage. In the second count she alternatively alleged that she was a third-party beneficiary of the insurance contract, that it was breached by Fireman's Fund through its failure to pay or to arbitrate, and that as a result she was entitled to damages. In the third count she alleged that she had demanded arbitration in accordance with the policy but that Fireman's Fund had sought to impose the costs of arbitration on her. She asked that Fireman's Fund be enjoined from now attempting to arbitrate.

A copy of the uninsured motorist endorsement was made a part of plaintiff's petition. She also attached a copy of her letter demanding arbitration, which was dated approximately one month before suit was commenced.

In its motion to dismiss, Fireman's Fund alleged the petition showed on its face a failure of plaintiff "to abide by and perform in accordance with the rules of the American Arbitration Association . ." A purported copy of those rules was attached to the motion. The only other material allegation of the motion is: "That Plaintiff is bound by the provisions of the policy of insurance under which she claims benefits, and accordingly, must pursue the initiation of a claim with the appropriate arbitration authority, the American Arbitration Association, as a condition precedent to any cause of action."

The trial court's ruling on the motion was as follows:

Plaintiff's commencing arbitration with American Arbitration Association is a contractual condition precedent to her entitlement to bring an action on the insurance contract re uninsured motorist coverage. Plaintiff's Petition fails to allege compliance as condition satisfied by defendant's failure to arbitrate after she has duly commenced proceedings. Plaintiff's Petition is dismissed at Plaintiff's

costs without prejudice to file against carrier should it fail to arbitrate after Plaintiff duly commences same with AAA or it fails to honor arbitration award or is in breach of its insurance agreement otherwise.

In this appeal plaintiff does not challenge the validity or enforceability of the arbitration clause of the Fireman's Fund policy. Instead she contends she attempted to invoke arbitration but Fireman's Fund did not perform its duty to arbitrate and she is therefore entitled to maintain her lawsuit. We have no occasion to determine in this case whether plaintiff could have been required to submit her claim to arbitration if she did not wish to do so. See *Joseph L. Wilmotte & Co. v. Rosenman Bros.*, 258 N.W.2d 317, 325 (Iowa 1977).

Principles governing the scope of review of a ruling on a motion to dismiss are delineated in *Weber v. Madison*, 251 N.W.2d 523, 525 (Iowa 1977). The motion may not be supported by its own allegations of fact nor may it rely on facts not alleged in the petition, except those subject to judicial notice. *Berger v. General United Group, Inc.*, 268 N.W.2d 630, 634 (Iowa 1978).

I. *The language of the arbitration clause.* The relevant provisions of the uninsured motorist endorsement of the Fireman's Fund policy are as follows:

The Company will pay all sums which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured highway vehicle because of bodily injury sustained by the insured, caused by accident and arising out of the ownership, maintenance or use of such uninsured highway vehicle; provided, for the purposes of this coverage, determination as to whether the insured or such representative is legally entitled to recover such damages, and if so the amount thereof, shall be made by agreement between the insured or such representative and the Company or, if they fail to agree, by arbitration.

\*　　\*　　\*　　\*　　\*　　\*

If any person making claim hereunder and the Company do not agree that such person is legally entitled to recover damages from the owner or operator of an uninsured highway vehicle because of bodily injury to the insured, or do not agree as to the amount of payment which may be owing under this insurance, then upon written demand of either, the matter or matters upon which such person and the Company do not agree shall be settled by arbitration, which shall be conducted in accordance with the rules of the American Arbitration Association unless other means of conducting the arbitration are agreed to between the insured and the Company, and judgment upon the award rendered by the arbitrators may be entered in any Court having jurisdiction thereof. Such person and the Company each agree to consider itself bound and to be bound by any award made by the arbitrators pursuant to this insurance.

The first provision purports to require the insured and insurer to submit the issue of the uninsured motorist's liability for damages and their amount to arbitration when the insured and insurer are unable to agree. Under the second provision, arbitration may then be invoked "upon written demand of either. . . ." The insured and insurer also purport "to be bound by any award made by the arbitrators. . . ."

These provisions do not make arbitration a condition precedent to suit as alleged by Fireman's Fund in its motion to dismiss and as held by the trial court in its order sustaining the motion. Instead, when arbitration is utilized it becomes the sole method of resolving the dispute. It is a substitute for litigation rather than an essential prelude to it.

Moreover, these provisions do not make arbitration a substitute for litigation in all cases. The clause purports to make arbitration mandatory only upon written demand of either party to the dispute. Otherwise the case may proceed to suit.

Therefore the trial court erred both in holding that the clause makes arbitration a condition precedent to suit and that it makes arbitration essential in all cases.

II. *Application of the clause to the facts alleged in the petition.* In seeking to invoke arbitration, plaintiff's attorney wrote the following letter to Fireman's Fund:

April 15, 1977

Mr. Raymond Hutchison
Senior Claims Representative
Fireman's Fund Insurance
4515 Fleur Drive
Des Moines, IA 50321

 Re: Your File No.: B 470 PA 158436
 Your Insured: Dave Ostrem Imports, Inc. D/A 10/25/74

Dear Ray:

Please consider this letter to be a demand for immediate arbitration, pursuant to the terms of the policy, and subject to Chapter 679 of the Code of Iowa (1977).

According to the policy language, I must make written demand to arbitrate upon you. The matter in dispute is the amount of payment owing under the insurance. My client demands the sum of $10,000.00 for her injuries.

 Sincerely,

 Beving, Swanson & Forrest
 [signed] Charles C. Crook

CSC:pjb
cc: Carolyn Johnson

Plaintiff alleges in her petition that Fireman's Fund sought to impose costs on her before agreeing to arbitrate and failed to perform its duty to settle the dispute by arbitration upon her demand. She also alleges that the policy is read against Fireman's Fund which drafted it and that doubts are resolved in her favor.

 The policy language must be given its ordinary meaning in accordance with the objectively reasonable expectations of the insured. *Rodman v. State Farm Mutual Automobile Ins. Co.*, 208 N.W.2d 903, 906–907 (Iowa 1973). Because an insurance policy is an adhesion contract, its provisions are construed in the light most favorable to the insured. *Connie's Const. v. Fireman's Fund Ins.*, 227 N.W.2d 207, 210 (Iowa 1975).

 We believe it was reasonable for plaintiff to think she had done all she was

required to do to initiate arbitration when she did what the policy said she should do to invoke it. The arbitration clause does not purport to command additional steps of her, such as the advancing of costs. Even though it states arbitration "shall be conducted in accordance with the rules of the American Arbitration Association," unless other means are agreed upon, it does not compel an insured to do more to initiate the process than demand it in writing. The rules of the American Arbitration Association may govern the means by which the dispute is arbitrated, but they do not affect the insured's right to obtain arbitration upon written demand.

 We hold that when an insured invokes arbitration by written demand under a clause like the one involved here the obligation rests with the insurer to do what is necessary to obtain the services of the American Arbitration Association unless the parties agree on other means of arbitration. Plaintiff had a right to rely upon Fireman's Fund to fulfill this duty. For purposes of reviewing the trial court's ruling we, like the trial court, must accept the well-pleaded factual allegations of the petition as true. By imposing conditions not provided for in the insurance policy and by failing to set the arbitration mechanism in motion, Fireman's Fund frustrated plaintiff's effort to obtain arbitration and breached its duty under the policy. Consequently it has lost its alleged right to arbitrate, and plaintiff has a right to maintain this action. See *Dee & Sons Co. v. Key City Fire Ins. Co.*, 104 Iowa 167, 173, 73 N.W. 594, 595 (1897); *Burton-Dixie Corp. v. Timothy Const. Co.*, 436 F.2d 405 (5 Cir. 1971); *Schramm v. Dotz*, 23 Wis.2d 678, 127 N.W.2d 779 (1964); 16 Williston on Contracts § 1923 at 570–590 (Third Ed. 1976).

The trial court erred in sustaining the motion to dismiss.

REVERSED AND REMANDED.

REES, ALLBEE, McGIVERIN and LARSON, JJ. concur.

REYNOLDSON, C. J., and HARRIS, J., concur specially.

UHLENHOPP and LeGRAND, JJ., dissent.

REYNOLDSON, Chief Justice (concurring specially).

I agree with majority's conclusion that "[w]e have no occasion to determine in this case whether plaintiff could have been required to submit her claim to arbitration if she did not wish to do so." I concur specially because of other language in the opinion.

The balance of this opinion responds to issues raised in the dissent.

I. *Policy toward arbitration.* The dissent suggests this jurisdiction has a long-standing hostility to the process of arbitration which should be cast aside for a more "modern" and enlightened view that would enable us to declare this arbitration provision valid and enforceable. In thus pummeling the court's alleged prejudice, the dissent blurs a distinction apparent in both our statutory and case law. This state has always favored voluntary arbitration of specific disputes. Chapter 679, The Code, which provides a simple arbitration procedure to resolve controversies, originated with the 1851 Code. § 2098 *et seq.* Over 36 years ago this court said:

The settlement of civil disputes by arbitration is a legally favored contractual proceeding whose object is to speedily determine the matter by a tribunal chosen by themselves, and thereby avoid the formalities, delay and expense of litigation in court. Such a method of settling controversies is a favorite of the law. *First Nat'l Bank v. Clay*, 231 Iowa 703, 713, 2 N.W.2d 85, 91 (1942) (citations omitted).

The hostility sensed by the dissent is not to arbitration of the above type, but to the concept persons may lose their recourse to courts and may be forced to arbitrate disputes not envisioned when the contract was made, by provisions to which no real assent was given.

These basic tensions have been expressed thusly:

The appearance of an arbitration clause in an adhesion contract is a theoretical inconsistency. * * * [A]dvocates of arbitration continue to stress that parties should agree to arbitrate conflicts arising between them on a wholly voluntary basis. In an ideal situation, two parties of roughly equal bargaining power agree to forego their right to seek justice in the courts in favor of what they perceive to be the greater benefits of arbitration * * *. Yet, voluntariness and equality of bargaining power have no place in a world of contracts of adhesion.

W. Wright, Arbitration Clauses in Adhesion Contracts, 33 Arb.J. 41, 41–42 (1978).

In the insurance policy before us neither the validity nor enforceability of the arbitration clause in this insurance policy is an issue. Nonetheless, the dissent injects both concepts into the case, treats them indiscriminately, and asks us to approve all clauses to arbitrate future disputes as valid and enforceable regardless of how general in scope and despite inclusion in an adhesion contract.

II. *Validity and enforcement.* Validity of an arbitration clause refers to whether the parties *can* bargain and agree to submit disputes to arbitration. A valid arbitration clause is then *enforceable* only if the parties *did* bargain and agree to include such a clause in their contract. Obviously an invalid clause is also unenforceable, not because the parties did not agree to arbitrate, but only because the court has determined, for public policy reasons, the parties *could not agree* to arbitrate. In such cases, the issue whether the parties did agree is never reached. See *Wheeler v. St. Joseph Hosp.,* 63 Cal.App.3d 345, 354, 133 Cal.Rptr. 775, 781–82 (1976); A. Widiss, Guide to Uninsured Motorist Coverage §§ 6.6 at 184–85, 6.7–.11 (1969).

Agreements to arbitrate "any and all controversies" that may arise from a contractual relationship have been held invalid and unenforceable in our prior cases. See *Joseph L. Wilmotte & Co. v. Rosenman Bros.,* 258 N.W.2d 317, 325 (Iowa 1977). Although the arbitration clause before us is limited to two specific questions, in practice these cover most uninsured motorist insurance controversies, as the dissent indicates.

But determining the *validity* of this clause would not affect the outcome of this appeal. If it is invalid Johnson was not required to arbitrate. She could withdraw from the arbitration before an award was made, *Wilmotte,* 258 N.W.2d at 325, and, as she has done, pursue her remedy in court. If the clause is valid, her course of action remains unaffected. Johnson grounds her suit on failure of Fireman's Fund to proceed with arbitration, a process she launched.

Nor is *enforceability* of this arbitration clause an issue here. Johnson, who is not the original insured, does not contend there was no voluntary agreement to arbitrate. She made a deliberate, counseled decision to benefit under the contract and now alleges she tried to arbitrate but Fireman's Fund would not cooperate. The issue is whether she complied with the contract and whether her demand obligated the insurer to proceed. This issue has been resolved by the majority opinion.

The dissent's gratuitous arguments that this arbitration clause is enforceable against Johnson, in the sense it was *voluntarily* agreed to, reaches an issue Johnson did not elect to litigate. In apparently urging this court to find a voluntary agreement to arbitrate future disputes in an adhesion contract, however, the dissent misstates our approach to an adhesion contract problem and has little authority to support its conclusion.

III. *Adhesion contract.* In asserting that a future disputes arbitration clause in an insurance adhesion contract is enforceable the dissent, as we have already noted, states the controlling consideration is the court's attitude on arbitration. A favorable attitude, it implies, should overcome a plain case of unawareness of the arbitration provision, the universal requirement that there be a voluntary agreement to arbitrate, and the concept that reasonable expectations of an ordinary insured should not be nullified by unexpected provisions in an adhesion contract.

The fallacy in this reasoning should be apparent. A jurist's personal disdain for any particular clause is wholly irrelevant if the contracting parties have agreed to include it in their contract. In determining whether an insured in fact agreed to the inclusion of an otherwise valid arbitration clause in his or her uninsured motorist coverage, we are only protecting a consumer's reasonable expectations through settled principles of contract law. Flavoring those reasonable expectations to our own tastes in contract clauses deprives both parties of their freedom to contract and ultimately protects no one. As demonstrated in divisions which follow, one need not be a strident foe of arbitration to recognize the insured is giving up a lot and accepting some risks in theoretically "agreeing" to arbitrate future disputes regarding his uninsured motorist coverage.

The dissent also employs this irrelevant attitudinal consideration to devise a rule which, if adopted, would emasculate precedents in this and other jurisdictions. Our case law does not hold that the adherent in an adhesion contract is bound by all terms in the agreement *except* those to which the maker "has reason to believe" the adherent would not assent if he or she knew of their inclusion. The test, at the very least, is the adherent's reasonable expectations, not the maker's. A contract of adhesion is construed strictly against the maker and in favor of the adherent to give effect to his or her reasonable expectations. See generally *C & J Fertilizer, Inc. v. Allied Mut. Ins. Co.*, 227 N.W.2d 169, 176–77 (Iowa 1975); *Rodman v. State Farm Mut. Auto. Ins. Co.*, 208 N.W.2d 903, 905–08 (Iowa 1973); Restatement (Second) of Contracts § 237, Comments e & f at 540–41 (Tent. Draft Nos. 1–7, 1973); 1 Corbin on Contracts § 1 at 2 (1963); 7 Williston on Contracts § 900 at 33–34 (3d ed. 1963); K. Llewellyn, The Common Law Tradition—Deciding Appeals 362–71 (1960); R. Keeton, Insurance Law Rights at Variance With Policy Provisions, 83 Harv.L.Rev. 961, 966–67 (1970); W. Slawson, Standard Form Contracts and Democratic Control of Lawmaking Power, 84 Harv.L.Rev. 529 (1971).

Finally, the dissent supports its conclusion with authorities which with but one exception concern the *validity* of arbitration clauses in uninsured motorist coverage, not enforceability. Of all the cases cited by the dissent or in the 24 A.L.R.3d 1325 annotation, only one has addressed the adhesion contract problem and resolved it adversely to the insured: *Wales v. State Farm Mutual Insurance Co.*, 559 P.2d 255, 258 (Colo. App.1976). In other cases where this issue has been raised, it has received favorable treatment. See *Heisner v. Jones*, 184 Neb. 602, 607, 169 N.W.2d 606, 609–10 (1969); *Barnhart v. Civil Serv. Employees Ins. Co.*, 16 Utah 2d 223, 229, 398 P.2d 873, 877 (1965).

As indicated above, an arbitration clause buried in an adhesion contract may generate two subsumed issues: whether the requirement of a voluntary agreement to arbitrate is met, and whether the reasonable expectations of the ordinary adherent have been frustrated by inclusion of the clause in uninsured motorist coverage.

IV. *Voluntary agreement.* For contract provisions to be binding there must be mutuality of assent between the parties. This assent must arise at the time the contract is made. See *McCarter v. Uban*, 166 N.W.2d 910 (Iowa 1969). Mutuality of assent is especially necessary for a binding arbitration clause. This is because of the important rights that are waived by arbitration agreements. Some arbitration provisions, like this one, provide that the arbitrator's decision shall be binding and final between the parties. See, e. g., *Prader v. National Masonic Accident Ass'n*, 95 Iowa 149, 160, 63 N.W. 601, 605 (1895). In such cases arbitration, except for entry and enforcement of judgment, entirely supplants the judicial process. Such disputes are determined by those outside the judicial system, and without the right to judicial safeguards.

Other arbitration provisions call for submission to arbitration as a condition precedent to judicial inquiry. *Zalesky v. Home Ins. Co.*, 102 Iowa 613, 619, 71 N.W. 566, 568

(1897). This form, denying immediate access to the courts, merely provides a circuitous—and additionally expensive—route to the courthouse.

Section 679.2, The Code, codifies the requirement for clear and mutual assent to statutory arbitration. It provides:

> The parties themselves, or those persons who might lawfully have controlled a civil action in their behalf for the same subject matter, must sign and acknowledge a written agreement, specifying particularly what demands are to be submitted, the names of the arbitrators, and court by which the judgment on their award is to be rendered.

An arbitration agreement in which these statutory requirements are not met cannot be enforced in court. *Khot v. Towne,* 201 Iowa 538, 207 N.W. 596 (1926) (valid acknowledgment held necessary for enforcement of arbitration agreement); *Love v. Burns,* 35 Iowa 150, 153–54 (1872) (failure to designate court for rendition of judgment on award violates statute and deprives court of jurisdiction thereunder). *First National Bank v. Clay,* 231 Iowa 703, 2 N.W.2d 85, cited by the dissent for the proposition that ch. 679 does not prohibit "otherwise valid common-law arbitration," was an action to set aside an arbitration award and a transaction based thereon, not an action to enforce the agreement. The assent of the parties to the contract for arbitration was obvious and uncontested.

In *Hawkins/Korshoj v. State Board of Regents,* 255 N.W.2d 124, 127–28 (Iowa 1977), we not only pointed out that "[a] party cannot be required to submit to arbitration any dispute which he has not *agreed* to submit" (emphasis supplied), we approvingly quoted from federal cases a holding that "the moving party should not be deprived of the arbitrator's judgment, when it was his judgment and all that it connotes that was *bargained for.*" *National R. R. Passenger Corp. v. Missouri Pacific R. R. Co.,* 501 F.2d 423, 428 (8th Cir. 1974) (emphasis supplied), quoting from *United Steelworkers v. American Mfg. Co.,* 363 U.S. 564, 568, 80 S.Ct. 1343, 1346, 4 L.Ed.2d 1403,

1407 (1960). See *Wheeler v. St. Joseph Hosp.,* 63 Cal.App.3d at 355, 133 Cal.Rptr. at 782 ("The fundamental assumption of arbitration is that it may be invoked as an alternative to the settlement of disputes through the judicial process 'only by reason of an exercise of choice by [all] parties.' ").

The dissent shuns the statutory arbitration theory of the parties and relies on the theory of common-law arbitration. But it is apparent we should require the same showing of a clear and mutual assent for common-law arbitration as we would require for a statutory arbitration proceeding.

This requirement should be heightened when the arbitration agreement at issue is contained in an insurance policy. As Williston recognizes:

> Since insurance contracts are generally, in fact, almost invariably, contracts of adhesion, and since applicants for insurance rarely read and even less frequently understand the language of the policy, a very real argument may be made as to the binding character of the arbitration clause.

16 Williston, *supra,* at 495.

Professor Widiss, one of the few experts in the narrow area of uninsured motorist coverage, has written the following analysis concerning lack of consent in these situations:

> There are several reasons to question whether the arbitration terms in the uninsured motorist endorsement constitute a voluntary written agreement. These arguments arise both out of the marketing practices and procedures which exist generally in the automobile liability insurance business, and out of certain aspects which are more directly related to the endorsement.
>
> First, automobile liability insurance is a "take it or leave it" proposition. Throughout the industry there is almost exclusive use of standard provisions which companies will not modify. There is no bargaining with insurance companies over the terms.
>
> Second, the insured usually does not have an opportunity to even examine the

policy until sometime after he has made his application—when it is either mailed to him or delivered by the company's agent. This is the first time most insureds ever see their policies. While this process is considered adequate to create a relationship in which the insured is allowed to enforce the policy provisions against the company—the arbitration statutes in these states arguably establish a different norm for an agreement which would allow the company to force an insured to arbitrate a future dispute.

Third, the uninsured motorist coverage is subsidiary to the primary transaction—the acquisition of automobile liability and/or comprehensive coverage. Consequently, to most purchasers, the entire uninsured motorist endorsement is no more than another incomprehensible portion of the insurance policy. In this context, even though the arbitration terms are repeated twice in the endorsement, it is unlikely that any terms of the endorsement buried in the middle of a multi-paged document will even be discovered, let alone questioned, so long as no special steps are taken by insurers to apprise purchasers of these terms.

Fourth, there is a generally accepted maxim that finds application to statutes on a variety of subject matters, according to which "statutes in derogation of the common law are to be strictly construed" (in the absence of a legislative declaration to the contrary). The application of this rule seems justifiable in this context. Especially when viewed in historical perspective, it is clear that the arbitration statutes were designed to modify but not completely eliminate the special status occupied by agreements to arbitrate disputes. It seems equally apparent that the language of the Uniform Act was intended to preserve the precept that the parties must actually enter into a voluntary agreement, as manifested by a written contract. Therefore, so long as terms in automobile liability insurance policies represent something substantially less than actual voluntary agreements by the insured to use arbitration, the arbitration terms should not be taken as a voluntary agreement which abridges a claimant's right to a judicial determination.

So long as the present marketing practices obtain, there will be no true voluntary agreements to arbitrate disputes arising out of the coverage afforded by the uninsured motorist endorsement. This raises the issue of whether silence on the part of the purchaser after receiving the written policy containing the arbitration terms should be taken as agreement. In order to warrant a determination of agreement by such acquiescence, the individual should have to be both aware of the terms—and understand their importance. In most instances the applicant is not only totally unaware of the provision, but would not comprehend the import of the clauses even if he were to read them.

Widiss, *supra*, at 185–87 (footnotes omitted).

We have utilized these basic arguments when faced with other insurance policy provisions to which there was no clear showing of assent. E. g., *State Farm Auto Ins. Co. v. Malcolm*, 259 N.W.2d 833 (Iowa 1977); *Steinbach v. Continental Western Ins. Co.*, 237 N.W.2d 780 (Iowa 1976); *C & J Fertilizer, Inc. v. Allied Mut. Ins. Co.*, 227 N.W.2d at 169. The only remaining justification given for not utilizing them when the provision is an arbitration clause is the observation that such clauses are standard in uninsured motorist coverage. But that shows an adherent has no choice but to purchase coverage which forces him or her into arbitration.

It is clear the essential condition to enforcing an arbitration clause—a free exercise of choice by both parties to reach a voluntary, knowing agreement to pursue that course—cannot and should not be satisfied by the dissent's proposed rule which, in the final analysis, must be grounded on the fiction that the adherent in an adhesion contract has read, understood and agreed to the provisions cutting him or her off from all judicial remedies.

V. *Reasonable expectations.* It is an axiom of our times that persons are litigation-minded and freely resort to the courts. There should be no serious disagreement that an Iowan reasonably expects this state's judicial resources to be available for resolution of his or her legal difficulties.

In division IV we already have cited our recent cases (and other authorities) holding the reasonable expectations of the ordinary insured cannot be frustrated by the fine print provisions of a unilateral insurance contract.

This principle ought to be applied in the typical situation in which the policy incorporating the uninsured motorist coverage is delivered to the insured without explanation and is not read by the latter. The dissent suggests no reason why the insured should be on notice to carefully inspect his policy for an obscure provision which substitutes, for his right to go to court, the provisions in an unknown document incorporated by reference. In omitting the essential terms of the arbitration, the clause before us is typical of such devices as they appear in standard form contracts. Those terms must be ascertained by examination of still another document, the American Arbitration Association rules.

We should retain the rule formulated in *Rodman* and *C & J Fertilizer* and applied in our subsequent decisions.

VI. *Other policy considerations.* Other considerations should cause us to hesitate before concluding the type of arbitration provision involved here is so meritorious it should be enforced without regard for the insured's assent.

A. For example, it is clear that the contracting *insurers* are underwriting the expenses of the American Arbitration Association, which in turn selects the arbitrators. The rules of that association (which are before us) disclose: "The balance of the administrative costs of AAA are covered by a $125.00 per case surcharge paid by the insurer or self insurer involved." See also A. Widiss, Perspective on Uninsured Motorist Coverage, 62 Nw.L.Rev. 497, 546 (1967) ("[E]ach insurer that subscribes to the services provided by the American Arbitration Association pays the Association an annual assessment * * *.").

The following language from *Commonwealth Coatings Corp. v. Continental Casualty Co.*, 393 U.S. 145, 148, 89 S.Ct. 337, 339, 21 L.Ed.2d 301, 304 (1968), is relevant here:

But neither this arbitrator nor the prime contractor gave to petitioner even an intimation of the close financial relations that had existed between them for a period of years. We have no doubt that if a litigant could show that a foreman of a jury or a judge in a court of justice had, unknown to the litigant, any such relationship, the judgment would be subject to challenge. This is shown beyond doubt by *Tumey v. Ohio*, 273 U.S. 510, 71 L.Ed. 749, 47 S.Ct. 437, 50 A.L.R. 1243 (1927), where this Court held that a conviction could not stand because a small part of the judge's income consisted of court fees collected from convicted defendants. Although in *Tumey* it appeared the amount of the judge's compensation actually depended on whether he decided for one side or the other, that is too small a distinction to allow this manifest violation of the strict morality and fairness Congress would have expected on the part of the arbitrator and the other party in this case. Nor should it be at all relevant, as the Court of Appeals apparently thought it was here, * * * [t]hat the payments received were a very small part of [the arbitrator's] income * * *." For in *Tumey* the Court held that a decision should be set aside where there is "the slightest pecuniary interest" on the part of the judge, and specifically rejected the State's contention that the compensation involved there was "so small that it is not to be regarded as likely to influence improperly a judicial officer in the discharge of his duty * * *."

Of course, payment by one of the arbitrating parties of the expenses of the organization selecting the arbitrators is once removed from a direct payment to the arbitrator. Although the potential conflict of interest may be more apparent than real,

some consideration should be given to the reaction of the other arbitrating party under the rule advanced by the dissent. The insured probably would learn for the first time after the event that the previously unread policy provision eliminated all recourse to the judicial system for resolution of the controversy. Upon receiving the AAA rules the insured would learn AAA selects the "Accident Claims Panel of Arbitrators" and if the parties are unable to agree on a member of the panel as arbitrator, AAA makes the appointment. The insured also would learn for the first time the insurers were underwriting the AAA operating expenses. He or she would surely question whether his or her interests were adequately considered.

B. The only reasons referred to in the dissenting opinion for mandating unlimited voluntary arbitration in these situations is that it saves court time and is a "speedy, informal, and relatively inexpensive procedure for resolving controversies arising out of commercial transactions." We should judicially note that Iowa courts are not congested with controversies concerning commercial transactions.

Claimed savings in lawyer time and costs in arbitration are open to question. I. Comisky & M. Comisky, Commercial Arbitration—Panacea or Nightmare? 47 Temple L.Q. 457, 459, 476, 484, 492 (1974); 6A Corbin, *supra*, at 393; A. Widiss, Guide to Uninsured Motorist Coverage, *supra*, at 247–48. Of course, if the benefits are obvious, there should be no difficulty in securing the insured's voluntary agreement to arbitrate under the simple provisions of ch. 679, The Code.

C. Although the dissent's suggested rule is limited to "the uninsured motorist insurance context," there would be no way to limit its reach into all kinds of standard form contracts. It has been estimated that standard form contracts probably account for more than ninety-nine percent of all contracts now made. W. Slawson, *supra*, 84 Harv.L.Rev. at 529. The inexorable extension of the doctrine the dissent advances would insure that mandatory future-dispute

arbitration soon would appear in all these instruments.

The arbitrator's award ordinarily is binding as to both the facts and the law. See *In re I/S Stavborg v. National Metal Convertors, Inc.*, 500 F.2d 424, 430–32 (2d Cir. 1974); *In re Mercy Lee Mfg. Co. v. Corltey Fabrics Co.*, 354 F.2d 42, 43 (2d Cir. 1965). 6A Corbin, *supra*, at 417 ("[A]n award will not be set aside merely because the arbitrators may have been ignorant or mistaken as to a law the knowledge of which might have caused a different decision.").

Thus the ultimate result of the dissent's proposed rule would be to deflect from the judicial system most controversies relating to commercial transactions. Growth and development of common law in this area would be stunted:

> The protection of awards against judicial interference and, under that umbrella, of the development of organized arbitration as a rulemaker have established "judicial powers" other than those provided by federal and state constitutions. It is not possible to maintain any legally established policy or order in domestic and international trade, whether it is an order of free competition protected by antitrust legislation or any other type of economic order provided by law, if courts abdicate their power in favor of private tribunals serving private interests.

H. Kronstein, Arbitration Is Power, 38 N.Y. U.L.Rev. 661, 699 (1963).

Diverting the flow of cases from the courts by "dejudicialization" has been tried on many bases and at many times but is generally found to be unsatisfactory. See P. Carrington, D. Meador & M. Rosenberg, Justice on Appeal 122–23 (1976).

D. When one is accused of a criminal offense we are careful to require the prosecution to prove defendant knowingly, voluntarily and intelligently waived his or her constitutional rights. *Brady v. United States*, 397 U.S. 742, 747–48, 90 S.Ct. 1463, 1468–69, 25 L.Ed.2d 747, 756 (1970); *State v. Russell*, 261 N.W.2d 490, 492–93 (Iowa 1978). It would be strange if we were not to accord those adherents in adhesion con-

tracts, who are not even suspected of any wrongdoing, the same concern.

The dissent's position would effectively deprive those people of their constitutional right to jury trial and due process protections nurtured through the years in judicial procedures. Instead, the dissent would have the court hold it is of no concern that the insured has not read the language by which these rights have been lost.

All of these considerations persuade me that this court should not adopt the involuntary arbitration rule contended for by the dissent, now or in the future.

HARRIS, J., joins in this special concurrence.

UHLENHOPP, Justice (dissenting).

I regret that the court majority has not taken this opportunity to abrogate the common-law rule which denies enforceability to executory arbitration agreements. We cited the rule in a recent decision, *Joseph L. Wilmotte & Co. v. Rosenman Bros.*, 258 N.W.2d 317, 325 (Iowa): "Under principles developed under the common law of this state, a participant in arbitration can withdraw from arbitration proceedings at any time, and any agreement on the part of the parties to make such an agreement the binding and exclusive means of settling future disputes is not enforceable."

I think the appeal presents four issues: (1) Does the present uninsured motorist coverage require arbitration for settling disputes regarding third-party liability and the amount of damages? (2) Under the policy arbitration clause, is the onus to go forward with arbitration proceedings on the party seeking relief? (3) Should our common-law rule on unenforceability of executory arbitration clauses be abrogated? and (4) Is the present arbitration clause otherwise valid?

I. *Policy Requirement of Arbitration.* The uninsured motorist coverage in the policy contains these clauses:

The Company will pay all sums which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured highway vehicle because of bodily injury sustained by the insured, caused by accident and arising out of the ownership, maintenance or use of such uninsured vehicle; *provided, for the purposes of this coverage, determination as to whether the insured or such representative is legally entitled to recover such damages, and if so the amount thereof, shall be made by agreement between the insured or such representative and the Company or, if they fail to agree, by arbitration.*

And:

If any person making claim hereunder and the Company do not agree that such person is legally entitled to recover damages from the owner or operator of an uninsured highway vehicle because of bodily injury to the insured, or do not agree as to the amount of payment which may be owing under this insurance, then *upon written demand of either, the matter or matters upon which such person and the Company do not agree shall be settled by arbitration, which shall be conducted in accordance with the rules of the American Arbitration Association unless other means of conducting the arbitration are agreed to between the insured and the Company*, and judgment upon the award rendered by the arbitrators may be entered in any court having jurisdiction thereof. Such person and the Company each agree to consider itself bound and to be bound by any award made by the arbitrators pursuant to this insurance. (Italics added.)

We read an insurance policy by giving ordinary meaning to its language. *Chipokas v. Travelers Indem. Co.*, 267 N.W.2d 393, 396 (Iowa); *Rodman v. State Farm Mut. Auto. Ins. Co.*, 208 N.W.2d 903, 906–907 (Iowa). The first clause quoted from the policy states plainly that the questions of whether the insured is entitled to recover damages from the third person and the amount of damages owing are to be determined by agreement between the insured and the Company, failing which, by arbitra-

tion. The second clause states plainly that if the insured and the Company do not agree on the insured's right to recover from the third person, or on the amount, those matters shall be settled by arbitration. Arbitration is thus not merely a condition precedent to suit; it is the method for determining the dispute, with judgment entered on the arbitration award.

In my opinion the policy plainly requires arbitration in order to resolve disputed questions regarding liability of the third person to the insured and damages. For treatment of various arbitration clauses, see Anno. 24 A.L.R.3d 1325.

II. *Onus on Party Seeking Relief.* I agree with the District Judge that the onus was on the insured to commence arbitration proceedings. The quoted clauses state first that liability and damages shall be ascertained by agreement. The parties did not agree on those issues. The policy then states that "upon written demand of either, the matter or matters upon which such person and the Company do not agree shall be settled by arbitration, which shall be conducted in accordance with the rules of the American Arbitration Association unless other means of conducting the arbitration are agreed to between the insured and the Company. . . ." (The insured did not allege that "other means" of arbitration were agreed to.)

Had the Company desired to get the dispute determined and had Johnson not demanded arbitration, the Company would have had to demand arbitration and then institute arbitration under the American Arbitration Association rules. The insured, however, desired to get the dispute determined; she was the one seeking relief. She correspondingly had to demand arbitration, which she did, and then institute arbitration under the American Arbitration Association rules. She did not allege that she did so institute arbitration.

This policy makes arbitration the substitute for suit. If no arbitration clause existed, Johnson would have had the task and expense of initiating suit; she could not have required the insurer to sue itself. The rule is the same with arbitration substituted for suit: the party seeking relief is the one who must go forward with arbitration proceedings. A case quite similar to the present one is *Mamlin v. Susan Thomas, Inc.,* 490 S.W.2d 634, 635, 639 (Tex.Civ. App.). There the plaintiff was a salesman of the defendant, on commission. The contract provided that disputes " 'shall at the demand of either party, be settled and determined by arbitration. . . . " The defendant demanded arbitration. Each party contended that the other party was the one who had to go forward with arbitration. Although the defendant was the one who had demanded arbitration, the court held that the plaintiff as the party seeking relief had to go forward with arbitration:

> We think it unlikely that the parties intended that the one seeking relief should be free to litigate in the courts unless his opponent assumes the burden to initiate arbitration proceedings by paying the fee required by the association and filing a statement of the nature of the dispute, the amount claimed, and the remedy sought. This burden naturally and logically falls on the claimant. In the absence of unequivocal language which we do not find here, placing the burden to initiate on the party desiring arbitration, we hold that the burden rests on plaintiff, the party seeking relief.

Circuit Judge Learned Hand stated in *Shanferoke Coal & Supply Corp. v. Westchester Service Corp.,* 70 F.2d 297, 299 (2 Cir.), aff'd, 293 U.S. 449, 55 S.Ct. 313, 79 L.Ed. 583, "It was the plaintiff who declared the contract to be at an end; and with that the defendant was contented. If the plaintiff meant to proceed further and enforce a claim for damages, the initiative rested upon it; it should have named the first arbitrator. If it did not but sued instead, it was itself the party who fell 'in default in proceeding with such arbitration,' not the defendant." Accord: *Kulukundis Shipping Co. v. Amtorg Trading Corp.,* 126 F.2d 978 (2 Cir.) (follows *Shanferoke*); *Guerra v. Richard G. Krueger Corp.,* 4 Misc.2d

696, 697, 150 N.Y.S.2d 759, 760 ("He [plaintiff] cannot compel the defendant to set the arbitration machinery in motion."); *Klein Coat Corp. v. Peretz*, 4 Misc.2d 341, 345, 153 N.Y.S.2d 92, 97 ("the offensive in instituting proceedings for arbitration lies with the aggrieved party, and it was the plaintiff who contended, and still does, that it had been wronged"); *New York Central R.R. v. Erie R.R.*, 30 Misc.2d 362, 213 N.Y.S.2d 15 (same); *Matter of Finkelstein*, 33 Misc.2d 929, 930, 228 N.Y.S.2d 502, 503, aff'd, 17 A.D.2d 137, 233 N.Y.S.2d 174 ("It is the respondents who contended, and still do, that they have been wronged. They cannot impose upon petitioner the burden of having set the arbitration machinery in motion."). See also *Lane-Tahoe, Inc. v. Kindred Constr. Co.*, 91 Nev. 385, 536 P.2d 491; 6 C.J.S. Arbitration § 41 at 235 ("The offensive in instituting proceedings for arbitration lies with the aggrieved party."); Reasor, Uninsured Motorist Coverage, 12 Drake L.Rev. 119, 125 ("All that either party need do to initiate arbitration is send the other written notice of Demand for Arbitration, and file two copies with the referee, the American Arbitration Association."). The following decisions, dealing with waiver under the particular facts, do not announce a different rule: *Necchi Sewing Machine Sales Corp. v. Carl*, 260 F.Supp. 665 (S.D. N.Y.) (waiver not found); *Sucrest Corp. v. Chimo Shipping Ltd.*, 236 F.Supp. 229 (S.D. N.Y.) (waiver); *Mayron's Bake Shops, Inc. v. Arrow Stores, Inc.*, 149 Conn. 149, 176 A.2d 574; *REA Express v. Missouri P.R.R.*, 447 S.W.2d 721 (Tex.Civ.App.).

The insured here commenced suit instead of initiating arbitration. Since she failed to allege that she went forward with arbitration under the American Arbitration Association rules, I agree with the District Judge that her petition in court is deficient—assuming the arbitration clause is enforceable and valid.

III. *Abrogating Common-Law Rule of Unenforceability.* The general common-law rule that executory arbitration agreements are unenforceable is not without exceptions. An agreement to arbitrate an "existing dispute," that is, an arbitration agreement which is made after the dispute arises, is enforceable. 5 Am.Jur.2d Arbitration & Award § 36 at 548; 6 C.J.S. Arbitration § 2 at 162. Since the present policy and arbitration clause went into effect before the loss occurred, the existing dispute exception does not apply.

Another exception relates to agreements to arbitrate "special questions" or a "specific point." These agreements are likewise enforceable. 6 C.J.S. Arbitration § 2 at 162, § 49 at 255; see also 5 Am.Jur.2d Arbitration & Award § 37 at 549. Thus the courts will enforce a contract clause which requires a finding by arbitrators or appraisers regarding a specific fact, before suit may be brought. *Eighmy v. Brotherhood of Ry. Trainmen*, 113 Iowa 681, 83 N.W. 1051 (fact as to total disability); *E. H. Marhoefer, Jr. Co. v. Mount Sinai, Inc.*, 190 F.Supp. 355, 359 (E.D.Wis.) (fact of amount of loss, to be determined by architect); *Carr v. American Ins. Co.*, 152 F.Supp. 700, 702 (E.D.Tenn.) (fact as to extent of fire loss—"but they may not oust a court of jurisdiction over legal issues"); *White Eagle Laundry Co. v. Slawek*, 296 Ill. 240, 245, 129 N.E. 753, 755 (general rule of unenforceability does not apply "to agreements to arbitrate special questions"); *In re Lower Baraboo River Drainage Dist.*, 199 Wis. 230, 225 N.W. 331 (fact as to whether certain work done properly—to be determined by engineer); *Fox v. Masons' Fraternal Accident Ass'n*, 96 Wis. 390, 395, 71 N.W. 363, 365 (fact as to "special matters" may be arbitrated). Here however the policy does not merely provide for arbitration as to a specific fact; arbitration encompasses the whole subject of liability of the third person and damages. Since those two legal-factual areas ordinarily embrace the entire controversy, the courts are displaced altogether in the usual uninsured motorist insurance claim; their role is merely to enforce arbitration awards. Rather than to attempt to place the present case under the rule enforcing arbitration of specific facts—where this broad clause for arbitration really does not fit—I must thus confront the common-law general rule that executory arbitration clauses are not enforceable.

Under the traditional common-law view, a contract clause requiring submission of future disputes to arbitration is unenforceable as ousting the courts from their jurisdiction. *Joseph L. Wilmotte & Co. v. Rosenman Bros.*, 258 N.W.2d 317, 325 (Iowa); see also *Prader v. National Masonic Accident Ass'n*, 95 Iowa 149, 63 N.W. 601; 5 Am. Jur.2d Arbitration & Award § 5 at 522; 6 C.J.S. Arbitration § 2 at 161. This court in dictum took a somewhat friendlier view toward arbitration in *City of Des Moines v. Des Moines Waterworks Co.*, 95 Iowa 348, 359, 64 N.W. 269, 273 ("If the parties to the agreement under consideration had provided that, in case of a dispute as to the readjustment of rates, it should be settled by arbitrators chosen as provided for in the ordinances of the city, we are not prepared to hold that the readjustment so made would not be valid and binding on the parties."). The same may be said of *Read v. State Ins. Co.*, 103 Iowa 307, 72 N.W. 665 (arbitration may be a condition precedent to action), and *Knapp v. Brotherhood of American Yeomen*, 139 Iowa 136, 117 N.W. 298 (arbitration clause enforceable as to facts). But the Iowa decisions, at least until recently, have generally rejected defenses based on failure to arbitrate, frequently by narrowly construing arbitration clauses or by finding waivers of arbitration. See 6 C.J.S. Arbitration § 2 at 162 ("[the] efforts perceptible in the earlier cases to construe arbitration proceedings and awards so as to defeat them"). E. g. *Gere v. Council Bluffs Ins. Co.*, 67 Iowa 272, 274, 23 N.W. 137, 138, *reh. den.* 67 Iowa 272, 25 N.W. 159 (defense of failure to arbitrate not upheld—by construction of the arbitration clause); *Davis v. Anchor Mut. Fire Ins. Co.*, 96 Iowa 70, 76, 64 N.W. 687, 689 (defense of failure to arbitrate rejected—policy construed not to require arbitration without prior written demand); *Lesure Lumber Co. v. Mutual Fire Ins. Co.*, 101 Iowa 514, 70 N.W. 761 (similar); *George Dee & Sons Co. v. Key City Fire Ins. Co.*, 104 Iowa 167, 173, 73 N.W. 594, 595 (defense of failure to arbitrate not upheld—finding of waiver); *Ames Canning Co. v. Dexter Seed Co.*, 195 Iowa 1285, 1290, 190 N.W. 167, 169 (award of

arbitrators enforced under agreement for arbitration but court stated, "The right, therefore, of a party to revoke a mere naked agreement of the character in question at any time before the decision or award of the arbitrators is generally recognized by the courts."); *In re Estate of Powers*, 205 Iowa 956, 218 N.W. 941 (arbitration award not upheld—not filed); *Oskaloosa Savings Bank v. Mahaska County State Bank*, 205 Iowa 1351, 1359, 219 N.W. 530, 533, 534 (completed arbitration upheld—court stated however that "weight of authority" sustains doctrine the parties cannot "oust the courts of their jurisdiction" by general arbitration clause and that this "seems to be the trend of our cases", also, "These cases, however, with many others which might be cited, were bottomed on the right of a party to such contract to revoke it at any time before decision had been reached or award made. We have found none of our own cases, nor any from our sister states, holding that, where a matter of this character has been submitted and final determination made by the person specified in the contract, one can then revoke such agreement."); *Wallace v. Brotherhood of Locomotive Firemen & Enginemen*, 230 Iowa 1127, 1133, 300 N.W. 322, 325 (defense of failure to arbitrate not upheld—decision that Brotherhood's secretary and treasurer could not be arbitrators, court also quoting from *Prader v. National Masonic Accident Ass'n*, 95 Iowa 149, 161, 63 N.W. 601, 605, that a general arbitration clause "will not deprive the courts of their appropriate jurisdiction, nor be enforced by them"). See also *Zalesky v. Home Ins. Co.*, 102 Iowa 613, 619, 71 N.W. 566, 567–568 (district court ruled appraisal was condition precedent to suit and insured did not appeal from that ruling, which became law of case).

In recent times a definite trend away from traditional hostility to arbitration has developed in this country, receiving its impetus primarily from statute but also supported by judicial decision. The original Restatement of Contracts in § 551 took the historical position that a provision purport-

ing to require arbitration of the question of breach of contract is unenforceable. The American Law Institute omitted this section in Restatement of Contracts Second, which states:

> A particularly important change has been effected by statutes relating to arbitration, which have now been enacted in so many jurisdictions that it seems likely that even in the remaining states, there has been a change in the former judicial attitude of hostility toward agreements to arbitrate future disputes. . . . Such agreements are now widely used and serve the public interest by saving court time. The rules stated in this Chapter do not preclude their enforcement, even in the absence of legislation. Restatement, Contracts 2d Ch. 14 (Introductory Note) at 48 (Tent. Draft 12).

A principal decision giving support to the Institute's new position is *United Ass'n of Journeymen v. Stine*, 76 Nev. 189, 351 P.2d 965. The Institute noted the trend also in the earlier Restatement of Conflict of Laws Second, Chapter 8, Topic 5 (Introductory Note) at 716 ("Commercial arbitration was originally in judicial disfavor. . . . This judicial attitude has now changed in partial consequence, at least, of the widespread enactment of statutes which in varying degrees declare arbitration agreements to be irrevocable and provide for their enforcement."). See also 5 Am.Jur.2d Arbitration & Award § 5 at 522:

> Although some of the courts formerly leaned strongly against enforcing arbitration agreements as tending to oust the courts from their lawful jurisdiction by private agreement, in some states arbitration early commanded much favor from the law as a means of promoting tranquility and the prompt and equitable settlement of disputes. Since the enactment of the arbitration statutes, beginning with the New York act in 1921 the courts have generally looked with favor on arbitration as a shortcut to substantial justice.

In addition, 6 C.J.S. Arbitration § 2 at 162–163:

> Although as already noted arbitration was early recognized at the common law as a mode of adjusting matters in dispute, yet, from [the] efforts perceptible in the earlier cases to construe arbitration proceedings and awards so as to defeat them, it would seem that they were not originally favored by the courts. This hostility, however, has long since disappeared, and, by reason of the fact that the proceeding represents a method of the parties' own choice and furnishes a more expeditious and less expensive means of settling controversies than the ordinary course of regular judicial proceedings, it is the policy of the law to favor and encourage arbitration. Thus, arbitration is said to be favored by a strong public policy, and it has been held that courts look with favor upon arbitration as a means of removing contentions from the area of litigation.

One of the first jurisdictions adopting the modern view upholding general arbitration clauses as a matter of common law was Colorado, in *Ezell v. Rocky Mountain Bean & Elevator Co.*, 76 Colo. 409, 232 P. 680, followed in *Zahn v. District Court in and for County of Weld*, 169 Colo. 405, 457 P.2d 387, and *Dominion Ins. Co. v. Hart*, 178 Colo. 451, 454, 498 P.2d 1138, 1140 ("arbitration is favored in Colorado"). See Aksen, Resolving Construction Contract Disputes Through Arbitration, 23 Arb.L.Journ. 141, 148.

Another early state was Minnesota, in *Park Constr. Co. v. Independent School Dist. No. 32*, 209 Minn. 182, 296 N.W. 475. The *Park* rule upholding arbitration clauses was followed in *Zelle v. Chicago & N.W. R.R.*, 242 Minn. 439, 446, 65 N.W.2d 583, 589 ("Arbitration has been looked upon with favor in this state both in the statutory and decision field."), and in *Grover-Dimond Associates v. American Arbitration Ass'n*, 297 Minn. 324, 327, 211 N.W.2d 787, 788 ("Clearly, it is the policy of this state . . . to encourage arbitration as a 'speedy, informal, and relatively inexpensive procedure for resolving controversies arising out of commercial transactions.' We do not in this

state 'intend to revive or encourage the historical common-law animosity toward arbitration in general.' ").

Pennsylvania likewise upholds arbitration clauses. *Mendelson v. Shrager*, 432 Pa. 383, 385, 248 A.2d 234, 235 ("Contracts that provide for arbitration are valid, enforceable and irrevocable, save upon such grounds as exist in law or in equity for the revocation of any other type of contract. This is equally true of both common law arbitration and the arbitration provided in the Act of 1927."); *Preferred Risk Mut. Ins. Co. v. Martin*, 436 Pa. 374, 376, 260 A.2d 804, 805, cert. den. 398 U.S. 905, 90 S.Ct. 1697, 26 L.Ed.2d 65 ("all disputes arising under the uninsured motorist clause of the standard insurance policy must be settled by arbitration"); *Flightways Corp. v. Keystone Helicopter Corp.*, 459 Pa. 660, 331 A.2d 184. Arbitration is also upheld in West Virginia. *Board of Education of County of Berkeley v. W. Harley Miller, Inc.*, 236 S.E.2d 439 (W.Va.). See also *E. E. Tripp Excavating Contractor, Inc. v. County of Jackson*, 60 Mich.App. 221, 230 N.W.2d 556; *L. H. Lacy Co. v. City of Lubbock*, 559 S.W.2d 348 (Tex.); *Martin v. Vansant*, 99 Wash. 106, 168 P. 990.

Commentators supporting the arbitration approach to conflict-resolution include McLaughlin, Arbitration Under Uninsured Motorist Insurance, 1962 Ins.L.Journ. 353, 364 ("We can hope, however, that some of the states will follow the lead of the Nevada Supreme Court and re-examine the old prejudices against arbitration. It seems rather anachronistic in the light of the present day agitation about congestion in the courts to find decisions based upon concern about ousting the courts of their proper jurisdiction by an agreement to arbitrate controversies."); Comment, Commercial Arbitration: A Need for Reform, 36 Mo.L. Rev. 343; Widiss, A Guide to Uninsured Motorist Coverage, 200 (1969); and Anno. 135 A.L.R. 59, 91–92.

The judicial trend favoring arbitration is discernible in two or our recent cases, *Joseph L. Wilmotte & Co. v. Rosenman Bros.*, 258 N.W.2d 317 (Iowa), and *Heck v. Geo. A.*

*Hormel Co.*, 260 N.W.2d 421 (Iowa). In *Wilmotte* we applied New York arbitration statutory law under a conflict of laws rule and thus upheld arbitration, although we cited the traditional common-law rule against arbitration. In *Heck* we upheld arbitration as a condition precedent to suit and made no mention of the general common-law rule.

Upon consideration of the question of enforceability, I believe Iowa should reverse its historical opposition and join the ranks of states which enforce clauses for arbitration of future disputes when the clauses are otherwise valid.

IV. *Validity of Arbitration Clause in Uninsured Motorist Coverage.* Aside from the common-law rule of unenforceability, is this particular arbitration clause valid? A jurisdiction which enforces arbitration generally will not uphold an arbitration clause which is otherwise invalid, as where the contract or clause was induced by fraud or duress. 5 Am.Jur.2d Arbitration & Award § 83 at 583; 6 C.J.S. Arbitration § 14 at 183–184. Johnson does not alleged grounds of invalidity such as fraud or duress. Nor does she allege that the American Arbitration Association rules are improper or that an arbitrator the Association would assign would be incompetent or disqualified, or even that she sought other means of arbitration under the policy clause.

A. Two Iowa statutes in this field do not reach the question of the validity of the instant clause. One is chapter 516A of the Code which requires uninsured motorist coverage in motor vehicle liability policies unless expressly waived. The forms and provisions of such coverage are subject to insurance-commissioner approval, and neither party contends the present standard form of uninsured motorist insurance was not approved. Such forms of necessity deal with a variety of subjects in providing uninsured motorist insurance. One of the usual subjects is arbitration, such as the arbitration clause in this standard form. See Reasor, Uninsured Motorist Coverage, 12 Drake L.Rev. 119, 125–128. Chapter 516A neither mandates nor prohibits arbitration as a

method of resolving uninsured motorist insurance claims.

The other statute, chapter 679, provides a procedure for arbitration of controversies. Since the requirements of that statute were not followed here, the statute is inapplicable. The statute does not, however, prohibit otherwise valid common-law arbitration. *First National Bank in Cedar Falls v. Clay*, 231 Iowa 703, 2 N.W.2d 85.

These statutes do not render the instant arbitration clause invalid.

B. Is this arbitration clause valid in the context of uninsured motorist coverage in an insurance policy? The clause is part of a standard form. The decisions show that standard forms containing clauses for arbitration of uninsured motorist coverage claims are commonly used. See e. g. *Miller v. Allstate Ins. Co.*, 238 F.Supp. 565 (W.D. Pa.); *Jeanes v. Arrow Ins. Co.*, 16 Ariz.App. 589, 494 P.2d 1334. Standard forms are used in other activities in today's world, including those involving trade and employer-employee relationships. Normally one of the parties is not aware of all the terms in the form, but by assenting to the form by accepting, using, or signing it he is bound by its terms. Restatement, Contracts 2d § 237 (Tent. Drafts 1–7). An exception exists, however, under these circumstances: "Where the other party has reason to believe that the party manifesting such assent would not do so if he knew that the writing contained a particular term, the term is not part of the agreement." *Id.* § 237(3).

Did Fireman's Fund have "reason to know" that Johnson would not have assented to the policy if she had known of the arbitration clause relating to uninsured motorist insurance? The answer that a court will give to this question appears to depend to a considerable extent on the hostile or friendly attitude that the particular court brings to the subject of arbitration generally. Contrast *Clayton v. Alliance Mut. Cas. Co.*, 212 Kan. 640, 512 P.2d 507, reh. den. 213 Kan. 84, 515 P.2d 1115 (jurisdiction not enforcing arbitration, takes view that arbitration clause is invalid in uninsured motorist coverage), with *Wales v. State Farm Mut. Auto. Ins. Co.*, 559 P.2d 255, 257 (Colo. App.) (citing *Clayton* but holding "we decline to adopt this view in light of the discernible policy supporting arbitration in this state"). Other cases upholding arbitration clauses as a matter of common law in the uninsured motorist insurance context include *Miller v. Allstate Ins. Co.*, 238 F.Supp. 565 (W.D.Pa.); *Nelson v. Allstate Ins. Co.*, 298 A.2d 337 (Del.); *Allstate Ins. Co. v. Pietrosh*, 85 Nev. 30, 454 P.2d 106; and *Hartford Ins. Group v. Kassler*, 227 Pa.Super.Ct. 47, 324 A.2d 521. See also 16 Williston, Contracts, § 1922B at 495–496 (3d Ed.) ("the majority of courts have treated and continue to treat the arbitration provision in the uninsured motorist policy as fully enforceable"). Cases pro and con are gathered in Anno. 24 A.L.R.3d 1325.

Uninsured motorist coverage places the insured and insurer in a peculiar position. In order for them to resolve the insured's claim against the insurer, two other issues must be resolved: the insured's contention that the uninsured third party is liable to him and the amount of such liability. To resolve those issues expeditiously in case of disagreement, arbitration has been incorporated into policies. See Reasor, Uninsured Motorist Coverage, 12 Drake L.Rev. 119, 125. I do not view arbitration with such disfavor that I believe an insurer has "reason to believe" the insured would not accept a policy knowing of the arbitration clause to resolve the issues of third-party liability and damages. I would thus hold the clause to be valid in the uninsured motorist insurance setting.

The decision of the court majority in this case is another in our line of decisions which refuse to uphold the defense of failure to arbitrate by construction of the contract. For the reasons I have stated I believe the District Judge was right in holding that Johnson must arbitrate, and I would therefore affirm.

LeGRAND, J., joins in this dissent.