CAVALIER INSURANCE
CORPORATION,
Appellant,

v.

Cathy V. OSMENT, Appellee.

Supreme Court of Tennessee.

June 1, 1976.

John T. Wilkinson, Jr., Memphis, for appellant.

Leonard V. Hughes, Jr., Hoffman, Hughes, McWhorter & Wener, P. C., Memphis, for appellee.

## OPINION

HARBISON, Justice.

The issue presented in this case is whether an insured may demand arbitration with his uninsured motorist insurance carrier, when the insured has been unable, after diligent efforts, to obtain personal service of process upon the uninsured motorist.

The essential facts of the case are stipulated. Appellee, Cathy V. Osment, was injured in an automobile accident in Shelby County on February 21, 1971. Her automobile was struck by a vehicle being operated by Patricia Taylor McCullar, a nonresident of Tennessee.

Appellant, Cavalier Insurance Corporation, was the liability insurance carrier for appellee. Its policy contained standard uninsured motorist coverage, as provided by T.C.A. § 56–1148 et seq. Approximately one week after the accident, appellee notified appellant of the collision. At that time, however, it was apparently believed by appellee and her counsel that either Patricia Taylor McCullar, the driver of the

other vehicle, or the owner of that vehicle, Doris Hall, had liability insurance coverage through Government Employees Insurance Company. This information later proved to be inaccurate, and it is now stipulated that there was no liability insurance coverage on the vehicle or the operator thereof involved in the collision with appellee.

Approximately eleven months after the accident, on January 19, 1972, appellee filed suit against Patricia Taylor McCullar in the Circuit Court of Shelby County. A copy of the complaint and summons in the action were served upon appellant, pursuant to T.C.A. § 56–1153, making it apparent that appellee intended to rely upon the uninsured motorist coverage provisions of her policy. Service of process upon the uninsured motorist, Mrs. McCullar, was attempted through the Secretary of State, at an address in Mississippi which was the address of her mother. The attempted service was ineffectual, however, and the Secretary of State so reported, indicating that the addressee had moved, leaving no forwarding address.

The Circuit Court action lay dormant for several months. On September 18, 1972 appellee made demand upon appellant for settlement of her claim for personal injuries and property damage, since she had been unable to effect service of process or obtain any recovery through her circuit court action. No written reply was made to this demand.

One week later, on September 25, 1972, the insurance carrier, through its attorney, filed a motion to dismiss the circuit court action for failure of appellee to obtain service of process upon the uninsured motorist, and for failure to obtain issuance of new process pursuant to Rule 3 of the Tennessee Rules of Civil Procedure. On October 6, 1972 counsel for appellee entered an order of nonsuit in that action. They promptly attempted to renew the action, and thus keep it alive pursuant to Rule 3, however, by filing a new suit on October 10, 1972. Again appellant, as the uninsured motorist carrier, was served with a copy of the process and complaint in this second action, but

attempts to serve process upon the motorist, Mrs. McCullar, again proved unsuccessful. There is filed in the record an affidavit of counsel for appellee that they had employed an investigator and had made extensive efforts to find and serve Mrs. McCullar with process, all without avail. It is stipulated in the record that counsel for appellee, Mrs. Osment, "have made diligent effort to ascertain the whereabouts of Patricia Taylor McCullar in order that she might be duly served with process, but they have been unsuccessful."

Having been unable to obtain service of process upon the uninsured motorist, and having had no response to their demand upon the uninsured motorist carrier for settlement of their claim, counsel for appellee, on January 13, 1973, undertook to institute arbitration proceedings by filing a demand for arbitration with the American Arbitration Association, Inc. An arbitrator was appointed by the association, and he scheduled a hearing on the claim. Appellant, however, denied that the arbitration clause of the insurance policy was enforceable, and at all times refused to enter into the arbitration proceedings. Ultimately it filed this action in the form of a declaratory judgment suit, seeking to enjoin the arbitration proceedings and to declare that appellee had no right to seek relief under the arbitration provisions of the policy.

Appellee filed an answer and counterclaim, asserting that she had no other viable or practical remedy than arbitration. In the alternative, she sought damages against the insurer for breach of its contract.

The chancellor filed an opinion to the effect that appellee was entitled to enforce the arbitration provisions of the insurance policy, upon the authority of *Price v. State Farm Mutual Automobile Insurance Co.*, 486 S.W.2d 721 (Tenn.1972). He further ruled that if the appellant refused to arbitrate the matter, appellee might, by motion, seek a reference to the Clerk and Master to determine damages. He also permitted either party to demand a jury trial if preferred.

Appellant sought and was allowed an interlocutory appeal before any further proceedings were had, pursuant to the provisions of T.C.A. § 27–305. Its basic assignments of error are to the effect that the chancellor erred in not enjoining the arbitration proceedings and that he erred in permitting what, in effect, amounts to a direct action against the uninsured motorist carrier under the counterclaim.

Appellant insists that it has not been shown conclusively that service of process upon the uninsured motorist, Mrs. McCullar, can never in fact be obtained. It insists that such personal service of process is necessary in order for the insured, Mrs. Osment, to proceed against her own insurance carrier.

Appellant relies heavily upon the recent decision of this Court in the case of *McCall v. Maryland Casualty Co.*, 516 S.W.2d 353 (Tenn.1974). In that case the Court held that a claimant could not maintain a direct action for damages against his uninsured motorist carrier, and that it would be necessary for the insured to obtain personal service of process upon the uninsured motorist before being entitled to proceed in a circuit court damage suit. The Court noted the inequitable and regrettable situation in which the insured was cast in a case where service of process could not be accomplished. Following the release of that opinion, the General Assembly amended the uninsured motorist statutes so as to provide for a direct action against the insurance carrier in such cases. See T.C.A. § 56–1153 (Supp.1975).

The *McCall* case, however, did not deal with the subject of arbitration directly, and clearly nothing therein was intended to cut off or defeat any right which the insured might have to seek arbitration. Indeed, in the course of the opinion, the Court stated:

"The insured does have the right to demand arbitration in the manner provided by the policy provisions." 516 S.W.2d at 355.

The uninsured motorist statutes, since their adoption in 1967, have contained the following provision:

"The uninsured motorist provision shall not require arbitration of any claim arising thereunder nor shall the insured be restricted or prevented in any manner from employing legal counsel or instituting legal proceedings." T.C.A. § 56–1153.

In the case of *Schleif v. Hardware Dealer's Mutual Fire Insurance Co.*, 218 Tenn. 489, 404 S.W.2d 490 (1966), a direct action was brought against the insurance carrier by the insured in a hit-and-run case. The case arose before enactment of the statute above cited and involved construction of the policy only. A direct action upon the policy was permitted in hit-and-run cases, and the Court held that the statute of limitations of six years, rather than the one year personal injury statute of limitations, was applicable. In that case neither party had demanded arbitration. The Court noted that in some states the arbitration provisions of uninsured motorist policies were not enforceable, but it stopped short of making such a declaration as to the law of this state. It simply held that under the circumstances of the case, a direct action on the policy itself could be maintained.

In the course of summarizing the provisions of the uninsured motorist statutes in the case of *Glover v. Tennessee Farmers Mutual Insurance Company*, 225 Tenn. 306, 468 S.W.2d 727 (1971), this Court referred to the arbitration provisions contained in T.C.A. § 56–1153. The Court said:

"This code section invalidates insurance contract provisions for arbitration of uninsured motorist claims, and sets out the course of procedure whereby an insured can reduce an uninsured motorist claim to judgment." 225 Tenn. at 309, 468 S.W.2d at 728.

The actual holding in the *Glover* case was that the statutes do not authorize the insured to maintain a direct action for damages against the uninsured motorist carrier, and that such action will not lie unless authorized by a provision of the policy. The language concerning arbitration was, at most, dictum, and it was substantially modified, if not overruled, by the separate opinion, concurred in by all of the members

of the Court, in the case of *Price v. State Farm Mutual Automobile Insurance Company*, 486 S.W.2d 721 (Tenn.1972).

In that case, it was held that the insurance carrier was estopped by its conduct from relying upon the one-year statute of limitations for personal injuries, and that the insured was entitled to demand arbitration. The suit in that case had been instituted by the insurance carrier for a declaratory judgment.

In a separate concurring opinion prepared by Mr. Justice Humphreys, the Court said:

"I am not unmindful of the provision of T.C.A. § 56–1153 respecting arbitration, nor of what was said in *Glover v. Tennessee Farmers Mutual Ins. Co.*, Tenn. [225 Tenn. 306], 468 S.W.2d 727. *Glover*, however, had nothing to do with arbitration, and, although it took notice of the statute provision in regard thereto, it did not attempt to interpret the statute. So, we are free to do that here. The statute must mean, since it simply provides that uninsured motorist provisions shall not *require* arbitration, and that the insured shall not be prevented by arbitration provisions from employing counsel and instituting suit, that such an arbitration provision cannot be made a condition precedent to suit. Having in mind that the purpose of this provision of the statute is to prevent the use of arbitration agreement provisions to prevent a suit by the insured under the general statute, there is no reason to hold that the statute prevents the insured from suing for and receiving the benefits he would have received if he had received the arbitration the insurer provided for. In sum, I hold that T.C.A. § 56–1153 does not deny the insured the right to the arbitration the insurer has agreed to afford him, and, when this right is denied by the insurer he may have its equivalent in court; and that as to this, the statute of limitation is six years." 486 S.W.2d at 725.

■ We believe that the foregoing is an accurate analysis of the meaning and effect of the arbitration provisions of the statute, T.C.A. § 56–1153. It is clear from the language of the statute that the insured may not be prevented by contract provisions from seeking recovery through the courts, in a damage suit against the uninsured motorist. Where, however, the insured is unable to obtain service of process or otherwise prosecute his action for damages against the uninsured motorist, as in the present case, the insured may invoke the arbitration provisions of the policy.

■ We recognize that ordinarily provisions in private contracts for the arbitration of future disputes are not enforceable under the general arbitration statutes of this state, T.C.A. § 23–501 et seq. See *Meirowsky v. Phipps*, 222 Tenn. 112, 432 S.W.2d 885 (1968). It has generally been held that such provisions may not be used to prevent parties from seeking their legal remedies in the courts. Ordinarily, a party may revoke an agreement to arbitrate prior to entering into an actual submission agreement and filing this of record.

It has been noted many times, however, that the uninsured motorist features of liability insurance policies pose unusual and difficult questions, both substantively and procedurally. In one sense, the insured's own insurance carrier is placed in the role of a liability carrier for the uninsured motorist. Yet the insured has a direct contract with the insurance carrier for the payment of his damages. The uninsured motorist features are incorporated directly into or are appended to a liability insurance policy covering scheduled motor vehicles belonging to the insured.

It was clearly the intention of the General Assembly to permit the insured to pursue, insofar as possible, his ordinary tort remedy against the uninsured motorist, and at the same time to have the benefit afforded by the "family protection" or uninsured motorist coverage of his own insurance policy, up to its limits. The procedure for doing this was prescribed in some detail in T.C.A. § 56–1153. It was further the intention of the General Assembly not to permit the insurance carrier to cut off or preclude the right of the insured to seek relief through the courts by making arbitration a

condition precedent. It was undoubtedly in this context that the statement was made in the *Glover* case that the statute "invalidates" the arbitration features of the policy.

On the other hand, the policy provisions are prepared by the insurance carriers, and presumably are approved by the Commissioner of Insurance. We see no prejudice or unfairness to the insurance carrier in permitting the insured to invoke arbitration where the insured, in all good conscience and after diligent efforts, is unable, through no fault of his own, to obtain service of process upon the uninsured motorist. Deprived of this legal remedy, the only recourse the insured has is to utilize the arbitration features of the policy.

The policy provision in the present case is as follows:

"If any person making claim hereunder and the company do not agree that such person is legally entitled to recover damages from the owner or operator of an uninsured automobile because of bodily injury to the insured, or do not agree as to the amount of payment which may be owing under this Part, then, upon written demand of either, the matter or matters upon which such person and the company do not agree shall be settled by arbitration in accordance with the rules of the American Arbitration Association, and judgment upon the award rendered by the arbitrators may be entered in any court having jurisdiction thereof. Such person and the company each agree to consider itself bound and to be bound by any award made by the arbitrators pursuant to this Part." [1]

It should be noted that the arbitration clause embraces both the question of whether the uninsured motorist is liable at all to the insured and the amount of damages sustained by the insured. In the present case appellant, the insurance carrier, insists that there is no liability on the part of the uninsured motorist to its insured under the facts of the accident. It accordingly insists that the chancellor was in error in ordering a reference to the Clerk and Master to ascertain damages, when the question of liability has not been established.

As to this, we are in agreement with the insurance carrier. If it does not agree to the arbitration procedures under its contract, we are of the opinion that the question of liability should be ascertained before any reference is executed as to the issue of damages. If the issue of liability is resolved in favor of the insured, then, of course, it will be appropriate to have proof taken on the degree and extent of personal injury and related expenses.

The insurance carrier insists that the chancery court does not have jurisdiction to entertain a tort action for damages. This, of course, is correct, under the provisions of T.C.A. § 16–602. Appellant has, however, itself invoked the jurisdiction of the chancery court over the very insurance contract here involved, in seeking a declaratory judgment and injunctive relief. The chancellor has given appellant an option to comply with the arbitration provisions of its own contract of insurance. Only as an alternative, in the event appellant does not agree, has the chancellor taken steps to give the insured an "equivalent in court", as stated in the *Price* case, *supra*. The counterclaim of the insured, therefore, is not a tort action against the uninsured motorist, but is a claim under the policy of insurance issued by the appellant, an action which clearly lies within the jurisdiction of the chancery court.

We do not find it necessary to depart from the general rules in this state, above referred to, that ordinarily arbitration clauses are not enforceable as to future disputes and that a provision for arbitration may be revoked prior to the filing of record of an actual submission agreement. Be-

---

1. Consistent with the Tennessee statute, however, the policy has an endorsement expressly providing that "*the insured shall not be required to arbitrate disputed claims* . . ."

under the uninsured motorist coverage (emphasis added). For the use of similar endorsements in other states, see Pretzel, *Uninsured Motorists* § 41.2 (1972).

cause of the special and unusual relationship between the insurer and insured in uninsured motorist cases, however, we are of the opinion that, as indicated in the *Price* case, *supra,* it is appropriate to permit enforcement of policy provisions regarding arbitration, at the option of the insured.[2] This result is expressly provided by statute in some jurisdictions,[3] and it is consistent with the Tennessee uninsured motorist statute as interpreted in *Price.* Of course, in given cases equitable principles such as estoppel, laches, or waiver could operate to deny the insured recourse to arbitration, despite the six-year statute of limitations otherwise obtaining. In this case, however, we find nothing in the conduct of the insured inconsistent with her demand for arbitration or prejudicial to the rights of the insurance carrier.

The assignments of error are overruled, and the judgment of the chancellor, as modified, is affirmed. The cause is remanded to the chancery court for further proceedings consistent herewith. Costs incident to the appeal will be taxed to appellant.

COOPER, BROCK and HENRY, JJ., concur.

FONES, C. J., not participating.

---

2. See discussion generally in Chapter 6, "Arbitration of Uninsured Motorist Claims", especially §§ 6.7, 6.14, Widiss, *A Guide to Uninsured Motorist Coverage* (1969).

3. E. g., Louisiana Rev.Stats. § 22:1406(D)(5) (Supp.1976). See *Commercial Union Ins. Co. v. Milazzo,* 265 So.2d 298 (La.App.1972).