**COUNTRY–WIDE INSURANCE COMPANY, Plaintiff,**

v.

**Thomas A. HARNETT, Superintendent of Insurance of the State of New York, Defendant.**

No. 75 Civ. 6271 (GLG).

United States District Court, S. D. New York.

Feb. 8, 1977.

Henry Mark Holzer, Brooklyn, N. Y., for plaintiff.

Louis J. Lefkowitz, Atty. Gen., New York City, by Irving Galt, Asst. Atty. Gen., New York City, of counsel, for defendant.

Before LUMBARD, Circuit Judge, and GRIESA and GOETTEL, District Judges.

## OPINION

GOETTEL, District Judge.

Plaintiff, a New York insurance company issuing automobile accident insurance, seeks to have declared unconstitutional two portions of New York's "No-Fault" Insurance Law.[1] Plaintiff attacks the provision permitting compulsory binding arbitration of certain disputes at the demand of any claimant (N.Y.Ins.Law § 675.2 (McKinney Supp. 1975)) and those requiring automatic renewal of the term of certain insurance policies.[2] It is claimed that to permit the

---

1. More formally known as the Comprehensive Automobile Insurance Reparations Act, N.Y. Ins.Law § 670 et seq. (McKinney Supp. 1975), as added by 1973 N.Y.Laws, c.13, effective February 1, 1974.

2. The statutes involved are Sections 7 and 11 of "An Act to Amend the Insurance Law, the Workmen's Compensation Law and the Vehicle and Traffic Law, In Relation to Establishing a Comprehensive Automobile Insurance Repara-

invocation of the compulsory arbitration provision only at the option of the claimant violates the Equal Protection and Due Process Clauses of the Fourteenth Amendment to the Constitution of the United States and the right to trial by jury found in Article 1, Section 2 of the New York State Constitution.[3] The policy renewal provision is said to violate the Contract Clause of the United States Constitution.[4]

New York's No-Fault Law was (and, perhaps, continues to be) the center of much controversy. Its constitutionality was challenged in the New York courts by claimant interests and was upheld by the New York Court of Appeals in *Montgomery v. Daniels*, 38 N.Y.2d 41, 378 N.Y.S.2d 1, 340 N.E.2d 444 (1975). The issues presented here were not passed upon and have not been authoritatively reviewed by the New York courts.[5] While there has been considerable litigation in other states concerning their No-Fault laws, with one case having been appealed to the Supreme Court of the United States,[6] these New York provisions appear unique and no decisions directly on point have been referred to the panel.

■ Plaintiff's principal argument with respect to the arbitration issue is that it is being deprived of its "right to access" to the courts. This argument derives primarily from the Supreme Court's decision in *Boddie v. Connecticut*, 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971). That case held that due process of law prohibited the State from denying indigents seeking divorces access to its courts simply because they could not pay court costs. While some of the language in the concurring opinions have broader implications (*see, e. g.*, 401 U.S. at 388, 91 S.Ct. 780, Brennan J. concurring), it is clear from the decision·in *United States v. Kras*, 409 U.S. 434, 93 S.Ct. 631, 34 L.Ed.2d 626 (1973) that there is no basic constitutional right to litigate all disputes.[7] *See also Ortwein v. Schwab*, 410 U.S. 656, 93 S.Ct. 1172, 35 L.Ed.2d 572 (1973).

■ Arbitration is a reasonable alternative to a judicial determination of insurance claims and, at least so long as no fundamental rights are involved, the state may choose to provide any rational method of dispute settlement that comports with the basic procedural safeguards required by due process. *Cf. Goldberg v. Kelly*, 397 U.S. 254, 266–71, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). New York's police powers are sufficient to justify compelling insurers to submit to binding arbitration. *Hardware Dealers Fire Ins. Co. v. Glidden Co.*, 284 U.S. 151, 158, 52 S.Ct. 69, 76 L.Ed. 214 (1931). One of the purposes of No-Fault legislation is to reduce the amount of litigation in the courts, and this provision serves that goal.[8] *Montgomery v. Daniels, supra* at 49–53, 378 N.Y.S.2d at 7–11, 340 N.E.2d at 448–51.

Plaintiff relies on *Wolff Packing Co. v. Indus. Court*, 262 U.S. 522, 43 S.Ct. 630, 67

tion System," 1973 N.Y.Laws, c.13, N.Y. Ins.Law § 167–a(4) (McKinney Supp. 1975); N.Y.Ins.Law § 167–a(6) (read in conjunction with N.Y.Ins.Law § 675(1) (McKinney Supp. 1975)) amended by 1976 N.Y.Laws, c.348 (McKinney).

3. Plaintiff's original claim in this regard was made under the United States Constitution, Seventh and Fourteenth Amendments. The complaint was subsequently amended to add the state claims.

4. U.S.Const. Art. I, § 10.

5. We are told they were raised in an appeal to the Second Department in 1975 in *Green Bus Lines v. Bailey*, 50 A.D.2d 924, 378 N.Y.S.2d 648 (1975). The Memorandum Decision, however, simply states that the court had considered certain constitutional issues not raised in the lower court and found them "to be of no substantial merit", citing *Montgomery v. Daniels, supra. Id.*

6. *Gentile v. Altermatt*, 423 U.S. 1041, 96 S.Ct. 763, 46 L.Ed.2d 631 (1976), dismissing an appeal from the Supreme Court of Connecticut which upheld its No-Fault Law.

7. The case concerned the requirement for the payment of fees in order to file in bankruptcy. In its holding the Court emphasized the availability of alternative remedies. 409 U.S. at 445, 93 S.Ct. 631.

8. The statistics of the New York State Judicial Conference reflect an improvement in court backlogs since the passage of the No-Fault bill. 1974 Report of the N.Y. Judicial Conference § 2.5.1.2 at 16.

L.Ed. 1103 (1923); *Dorchy v. Kansas*, 264 U.S. 286, 44 S.Ct. 323, 68 L.Ed. 686 (1924), and *Wolff Packing Co. v. Indus. Court*, 267 U.S. 552, 45 S.Ct. 441, 69 L.Ed. 785 (1925). These cases held that attempts to fix wages and compel arbitration were constitutionally impermissible because the industries there (*i. e.*, meat packing and coal mining) were not sufficiently "clothed with a public interest", to justify these regulations. This "public interest" standard was expressly rejected in *Nebbia v. New York*, 291 U. S. 502, 54 S.Ct. 505, 78 L.Ed. 940 (1934), where the Court substituted the broader test of "arbitrariness" concluding:

> "But there can be no doubt that upon proper occasion and by appropriate measures the state may regulate a business in any of its aspects, including the prices to be charged for the products or commodities it sells." *Id.* at 537, 54 S.Ct. at 516.

The Court has steadily rejected the substantive due process approach exemplified by *Wolff* and *Dorchy*, espousing a constitutional doctrine under which "the due process clause is no longer to be so broadly construed that * * * state legislatures are put in a strait jacket when they attempt to suppress business and industrial conditions which they regard as offensive to the public welfare." *Lincoln Fed. Labor Union v. Northwestern Iron & Metal Co.*, 335 U.S. 525, 536–37, 69 S.Ct. 251, 257, 93 L.Ed. 212 (1949).

The only federal case directly presenting a due process analysis of compulsory arbitration of insurance claims is *Hardware Dealers Fire Ins. Co. v. Glidden*, 284 U.S. 151, 52 S.Ct. 69, 76 L.Ed. 214 (1931). It clearly disposes of plaintiff's contentions concerning arbitration. The Minnesota statutory scheme required all state fire insurance policies to provide for compulsory binding arbitration of the amount of certain losses. The insurance company maintained that this infringed its rights under the Fourteenth Amendment. The Court rejected the challenge concluding:

> "The Fourteenth Amendment neither implies that all trials must be by jury, nor guarantees any particular form or method of state procedure. . . . In the exercise of that power and to satisfy a public need, a state may choose the remedy best adapted, in the legislative judgment, to protect the interests concerned provided its choice is not unreasonable or arbitrary, and the procedure it adopts satisfies the constitutional requirements of reasonable notice and opportunity to be heard." *Id.* at 158, 52 S.Ct. at 71.

The Court noted that this procedure was comparable to other constitutionally permissible processes such as workmen's compensation proceedings where compensation is determined administratively, and such as "findings of fact by boards or commissions which . . . are [statutorily] made conclusive upon the courts if supported by evidence." *Id.* at 160, 52 S.Ct. at 71.

The procedural safeguards of plaintiff's interests embodied in the New York State No-Fault Arbitration Rules include provision for adequate notice, hearing before an impartial decision-maker, presentation of evidence and witnesses who testify under oath, and the assistance of counsel. Arbitration awards are subject to judicial review and may be vacated or modified for any one of the several grounds set forth in N.Y.C.P.L.R. § 7511 (McKinney 1963) (which deals with *voluntary* arbitration). Moreover, the New York Court of Appeals appears to have added another element to the judicial review authorized by N.Y.C.P. L.R. § 7511. In *Mount St. Mary's Hosp. v. Catherwood*, 26 N.Y.2d 493, 311 N.Y.S.2d 863, 260 N.E.2d 508 (1970), involving *compulsory* arbitration, the court declared that due process required a further review of whether the award was supported by the evidence in the record. *Id.* at 508–10, 311 N.Y.S.2d at 874–76, 260 N.E.2d at 516–518. See also the Court of Appeal's recent decision in *Caso v. Coffey*, 41 N.Y.2d 153, 391 N.Y.S.2d 88, 359 N.E.2d 683 (1976). As the Supreme Court has stated, "due process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972). The process afforded plaintiff

**1034**

clearly passes constitutional muster. *See, e. g., Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976); *Arnett v. Kennedy*, 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974). The state police power may properly regulate the insurance industry so long as there is a reasonable relationship between the regulation and protection against menaces to the health, safety and welfare of society. *See West Coast Hotel Co. v. Parrish*, 300 U.S. 379, 391, 57 S.Ct. 578, 81 L.Ed. 703 (1937).

Perhaps the strongest element of plaintiff's position is the fact that only claimants, and not the insurance companies, may demand arbitration.[9] There is no legislative history explaining this distinction. It is generally thought however, that arbitration is speedier and less costly than litigation. *Wilko v. Swan*, 346 U.S. 427, 431–32, 74 S.Ct. 182, 98 L.Ed. 168 (1953). The claimant is seeking benefits and, therefore, desires speed while the carrier, normally, would not. Clearly, the positions of an individual claimant and the insurance carrier are unequal. And the carrier, of course, has a greater ability to bear the costs of litigation. There are, therefore, rational bases for the classification, which is all that is necessary. *City of New Orleans v. Dukes*, 427 U.S. 297, 96 S.Ct. 2513, 2516–17, 49 L.Ed.2d 511 (1976); *Goesaert v. Cleary*, 335 U.S. 464, 466–67, 69 S.Ct. 198, 93 L.Ed. 163 (1948). When dealing with parties in unequal positions, it is not unusual to give an arbitration versus litigation decision only to the weaker or aggrieved party. *See, e. g., Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974).[10]

The plaintiff also argues that it has been denied its right to jury trial under the New York Constitution, Article 1, Section 2, which states in pertinent part: "Trial by jury in all cases in which it has heretofore been guaranteed by constitutional provision shall remain inviolate forever." This issue is not free from doubt. Claims under insurance policies are, broadly speaking, contract claims as to which there has been a right to jury trial since 1777. New statutory compensation schemes that restricted the right to jury trial have been criticized by the New York courts. *Ives v. South Buffalo*, 201 N.Y. 271, 94 N.E. 431 (1911).[11] However, recent cases have indicated that *Ives* may no longer be the law of New York. *See, e. g., Montgomery v. Daniels, supra*, at 67, 378 N.Y.S.2d at 24, 340 N.E.2d at 461.[12]

Defendant relies on *Montgomery v. Daniels, supra*, for the proposition that where the legislature has abolished a cause of action, there remains nothing to which the right of trial by jury may attach. However, the cause of action has not been abolished here, but merely modified, while retaining the claimants' right to jury trial. Of course, it could be argued that the right to benefits under No-Fault has become more equitable than contractual (in which case there is no right to jury) or that it amounts to a statutory rather than a common law claim. R. Keeton & J. O'Connell, *Basic Protection for the Traffic Victim* 498–504 (1965). Since this is a novel and important issue as to which the state law is evolving, it would appear that this Court should exercise its discretion to refuse to decide this pendent issue of state law. *Ha-*

9. Section 675(2) of the Insurance Law provides:
   "Every insurer shall provide a claimant with the option of submitting any dispute involving the insurer's liability to pay first party benefits, the amount thereof or any other matter which may arise under subdivision one of this section to binding arbitration pursuant to simplified procedures to be promulgated or approved by the superintendent."

10. This case held that arbitration of an employee's claim of racially discriminatory discharge did not bar a later court suit under the Civil

Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* (1970). The employer, however, is restricted to the grievance arbitration process.

11. This case involved the State's then new Workmen's Compensation Act. The Act was found unconstitutional on other grounds.

12. The Court of Appeals stated that "[i]n our view *Ives* would not be similarly decided by our court today." *Montgomery v. Daniels*, 38 N.Y.2d at 67, 378 N.Y.S.2d at 24, 340 N.E.2d at 461.

*gans v. Lavine,* 415 U.S. 528, 545–50, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974). As the Supreme Court observed recently, in a related context, in *Bellotti v. Baird,* 428 U.S. 132, 96 S.Ct. 2857, 2866, 49 L.Ed.2d 844 (1976):

"[A]bstention is appropriate where an unconstrued state statute is susceptible of a construction by the state judiciary 'which might avoid in whole or in part the necessity for federal constitutional adjudication, or at least materially change the nature of the problem.' *Harrison v. NAACP,* 360 U.S. 167, 177, [79 S.Ct. 1025, 3 L.Ed.2d 1152] (1959)."

■ Finally, we have plaintiff's attack on the provisions which require automatic renewal of most automobile insurance policies for specified periods,[13] as violative of the Contract Clause, U.S.Const. Art. I, § 10, cl. 1.

We are told that the legislature first extended the life of the policies in order to ensure continuance of an orderly market during the early years of No-Fault.[14] This extension of the automatic renewal feature was repeated in 1976. The 1976 extension stemmed from the same considerations, specifically, to avoid dumping vast numbers of insureds from the voluntary market with a consequent doubling of the number of insureds in the assigned risk pool.[15] The adverse impact on the plaintiff of the renewals and the enforced retention of "high risk" insureds is heightened by the fact that No-Fault increased the financial liability of insurers from a minimum requirement of $20,000 per accident to $50,000 per claimant for first party benefits.

■ The public need for these extensions has been sufficiently demonstrated. Regulation of the insurance industry, in order to provide adequate protection of the public, is surely a proper subject for the state's exercise of its police power. *Califor-*

*nia State Auto. Ass'n v. Maloney,* 341 U.S. 105, 109–110, 71 S.Ct. 601, 95 L.Ed. 788 (1950); *Hardware Dealers Mutual Fire Ins. Co. v. Glidden, supra,* at 157–58, 52 S.Ct. 69. The same public interests which justified the imposition of the entire No-Fault scheme support this aspect of the statutory framework. *Montgomery v. Daniels, supra.* The law accomplishes a legitimate public goal and any contract right must yield to it. *Veix v. Sixth Ward Bldg. & Loan Ass'n,* 310 U.S. 32, 41, 60 S.Ct. 792, 84 L.Ed. 1061 (1940); *Home Bldg. & Loan Ass'n v. Blaisdell,* 290 U.S. 398, 437, 54 S.Ct. 231, 78 L.Ed. 413 (1934); *Marcus Brown Holding Co. v. Feldman,* 256 U.S. 170, 41 S.Ct. 465, 65 L.Ed. 877 (1921).

In conclusion, therefore, the amended complaint must be dismissed. This, of course, is without prejudice to the institution of a state court action pursuing the state claim.

---

**13.** See note 2 *supra.*

**14.** Memorandum of the State of New York Insurance Department No. 17 (May 19, 1976) at 3.

**15.** See note 14 *supra.* The parties differ on the construction of the renewal provisions—whether they provide for a total of four or five years of extensions. For determination of the issue before us we think it makes no difference.