**Marilyn Odem LITCHSINN, Individually and as Administrator of the Estate of Thomas Lynn Odem, Deceased, Appellant,**

v.

**AMERICAN INTERINSURANCE EXCHANGE, Appellee.**

**No. 63408.**

Supreme Court of Iowa.

Jan. 23, 1980.

Robert W. Brinton of Archerd, Johnson & Brinton, Clarion, for appellant.

Don W. Burington of Laird, Burington, Bovard, Heiny & McManigal, Mason City, for appellee.

REES, Justice.

The plaintiff, Marilyn Odem Litchsinn, initiated this litigation challenging the withdrawal of defendant American Interinsurance Exchange from an arbitration proceeding which had been undertaken pursuant to an uninsured motorist provision in an insurance policy issued to Litchsinn by the company. The trial court, relying on the common law rule that either party to an arbitration may withdraw from the proceeding prior to the award or decision of the arbitrator, sustained defendant's motion to dismiss. For the reasons set forth below, we reverse and remand this case for further proceedings.

On June 13, 1972, Thomas Odem, the son of the plaintiff, was killed while riding in an automobile driven by an uninsured motorist. American Interinsurance Exchange (hereinafter American), the plaintiff's insurer, disputed its liability under its policy. In the event of a dispute over liability, the policy provides for arbitration of the issue upon written request of either party to the contract. The pertinent provision of the policy contract states:

> If any person making claim hereunder and the company do not agree that such person is legally entitled to recover damages from the owner or operator of an uninsured motor vehicle because of bodily injury to the insured, or do not agree as to the amount of payment which may be owing under this part, then, upon written demand of either, the matter or matters upon which such person and the company do not agree shall be settled by arbitration in accordance with the rules of the American Arbitration Association, and judgment upon the award rendered by

the arbiter may be entered in any court having jurisdiction hereof. Such person and the company here agree to consider itself bound and to be bound by any awards made by the arbitrator pursuant to this part.

Plaintiff and American agreed, following plaintiff's request, to arbitrate the question and a request for arbitration was filed with the American Arbitration Association. An arbitrator was appointed and the matter was set for hearing in October, 1977.

Following adverse evidentiary rulings, American unilaterally withdrew from the arbitration proceeding on January 4, 1978, following the close of all the evidence. All that remained was the issuance of the arbitrator's decision and award. The plaintiff filed an objection to American's withdrawal and on February 18, 1978, the arbitrator filed his award, granting Litchsinn $10,-000.00 under the policy. In his decision the arbitrator also found that American was prohibited from withdrawing from the arbitration proceedings by section 37 of the American Arbitration Association rules and section 679.6, The Code 1977.

On July 8, 1978, the plaintiff filed her petition for declaratory judgment seeking enforcement of the arbitrator's award. The district court entered its findings, conclusions and award on March 26, 1979, concluding that the requirements of chapter 679 had not been complied with and that existing Iowa law gave American the right to withdraw from arbitration at any time prior to the final decision of the arbitrator. The trial court thereupon sustained defendant's motion to dismiss plaintiff's petition, from which ruling plaintiff perfected a timely appeal to this court.

We find resolution of the following issues necessary to the disposition of this appeal:

(1) Did the arbitration proceeding involved herein comply with the requirements of chapter 679, The Code 1977, so as to prohibit the withdrawal of either party?

(2) Should an insurer be permitted to withdraw from arbitration which has been initiated by an insured pursuant to the terms of an insurance policy which the company had authored?

I. The plaintiff first contends that the arbitration undertaken with American met the requirements of chapter 679, The Code, and that American's withdrawal was in contravention of section 679.6 which provides: "Neither party shall have the power to revoke the submission without the consent of the other." If all the preliminary requisites to statutory arbitration had been met, then the trial court erred and American's withdrawal was ineffective. Our examination of the record leads us to conclude that the requirements of chapter 679 were not met.

Section 679.2 provides:

The parties themselves, or those persons who might lawfully have controlled a civil action in their behalf for the same subject matter, must sign and acknowledge a written agreement, specifying particularly what demands are to be submitted, the names of the arbitrators, and court by which the judgment on their award is to be rendered.

No such document appears in the record. Any attempt to integrate the correspondence between the parties and the documentation in the record also falls short of compliance. Chapter 679 is applicable only when the statutory requirements have been met. *In re Ames-Farmer Canning Co.*, 190 Iowa 1259, 179 N.W. 105 (1920). Thus the protection for the arbitration process provided by section 679.6 is inapplicable and the arbitration must be treated as one at common law. *Foust v. Hastings*, 66 Iowa 522, 24 N.W. 22 (1885); *Love v. Burns*, 35 Iowa 150 (1872); *McKnight v. McCullough*, 21 Iowa 111 (1866). Arbitration was initiated in accord with the terms of the insurance policy and the rules of the American Arbitration Association, which do not require the written agreement mentioned in section 679.2. The trial court was correct in finding noncompliance with chapter 679.

We therefore turn to plaintiff's alternative ground for relief.

II. The trial court concluded that American's withdrawal from the proceeding prior

to the arbitrator's award was permissible under the common law. Such conclusion is correct. As we recently stated in *Joseph L. Wilmotte & Co. v. Rosenman Bros.*, 258 N.W.2d 317, 325 (Iowa 1977) (citations omitted):

> Under principles developed under the common law of this state, a participant in arbitration can withdraw from arbitration proceedings at any time, and any agreement on the part of the parties to make such an agreement the binding and exclusive means of settling future disputes is not enforceable. However, it also appears to be true that while provisions to bind the parties to the use of arbitration to settle future disputes is not enforceable by the Iowa courts, the courts do not treat them as void and will enforce them after an arbitration award has been given to one of the parties.

We are thus confronted with the issue of whether, under the facts of this case, we should continue our adherence to the common law and not enforce the arbitration provision of the insurance policy. We conclude that compelling reasons exist for abandonment of the common law position and reverse the judgment of the trial court.

Before reaching the merits of this issue, it should be made clear what is and what is not being decided at this time. We are not passing upon the general enforceability of contract provisions to arbitrate future disputes. Nor are we deciding whether the arbitration clause may be enforced at the behest of the insurer who authored the policy. We note the existence of a substantial issue as to the voluntariness of the parties when enforcement of an arbitration clause in an adhesion contract is sought by the insurer. *See Johnson v. Fireman's Fund Insurance Co.*, 272 N.W.2d 870, 876–79 (Iowa 1978) (Reynoldson, J., concurring); Stone, *A Paradox in the Theory of Commercial Arbitration*, 21 Arb.J. 157 (1966). Such is not the case here. What is being decided at this time is whether the common law of this state should be abrogated to prohibit the withdrawal of the insurer from arbitration which has been initiated by the insured pursuant to the insurance policy drawn and prepared by the insurer. An agreement to arbitrate a future dispute is involved, but our analysis is subject to the aforementioned limitations.

We have previously held arbitration agreements, such as that involved herein, to be against public policy and unenforceable as purporting to oust the court of its jurisdiction. *Wallace v. Brotherhood of Locomotive Firemen and Enginemen*, 230 Iowa 1127, 1133–34, 300 N.W. 322, 325–26 (1941). In *Ames Canning Co. v. Dexter Seed Co.*, 195 Iowa 1285, 1288–89, 190 N.W. 167, 169 (1922), we acknowledged the right of a party to revoke a common law agreement to arbitrate before a final decision had been rendered, finding the majority of the courts to support such a position. We conclude that there has been sufficient change in the national legal attitude, both judicial and legislative, toward agreements to arbitrate uninsured motorist claims as to justify revision of our position and enforcement of the agreement in the case before us.

This century has seen a marked trend away from the common law bar to judicial enforcement of agreements to arbitrate future disputes. Thirty-nine states have enacted statutes which would uphold enforcement of arbitration agreements regarding future disputes such as that at issue. *See* Note, *An Example for Reform: The Insurance Industry Arbitration Process*, 47 U.Mo. K.C.L.R. 444, 448 n. 32 (1979). Judicial movement away from the common law standard has also been evidenced. *See Johnson v. Fireman's Fund Insurance Co.*, 272 N.W.2d at 884–86 (Uhlenhopp, J., dissenting); *see also Nelson v. Allstate Insurance Co.*, 298 A.2d 337 (Del.Super.1972); *Liberty Mutual Insurance Co. v. Marino*, 370 So.2d 397 (Fla.Dist.Ct.App.1979); *Cavalier Insurance Corp. v. Osment*, Tenn., 538 S.W.2d 399 (1976). These latter cases involved enforcement of arbitration agreements regarding uninsured motorist claims. In *Cavalier*, Tennessee, which has an arbitration statute like ours which enforces only agreements to arbitrate present disputes, judicially decided to allow an *insured* to enforce an arbitration provision (identical

to the provision in Litchsinn's policy) under certain conditions, 538 S.W.2d at 404–405, without fully departing from the common law. The facts of the case before us lead us to a like conclusion.

We have noted the changing attitude of the courts toward arbitration, and the reasons therefor, in *Hawkins/Korshoj v. State Board of Regents*, 255 N.W.2d 124, 127 (Iowa 1977): "[A]rbitration is a legally favored contractual proceeding as a means of settling civil disputes without the expense and delay of litigation." In construing a like policy provision, we said that "when arbitration is utilized it becomes the sole method of resolving the dispute. It is a substitute for litigation rather than an essential prelude to it." *Johnson*, 272 N.W.2d at 873. The policy provision in question, identical to the clause in *Johnson*, does not preclude litigation, but provides an alternative means of resolving the controversy. Arbitration is not required until a dispute exists *and*, assuming the voluntariness of the parties, a party files the requisite application. Until such time, litigation remains an alternative. A court's jurisdiction is not "ousted" any more than it would be by an accord and satisfaction between the parties.

To permit an insurance company, author of the policy, to provide for arbitration as a means of settling a dispute and to then withdraw as the proceedings approach a close would be judicial endorsement of a breach of contract and a defeat of the purposes underlying arbitration, avoiding the expense and delay of litigation. Maintenance of the common law, under these facts, would allow an insurer to prolong litigation and drain or even exhaust the resources of the insured by avoiding final settlement of the claim.

Where, as here, the arbitration is initiated by the insured, no issue of voluntariness regarding enforcement of an adhesion contract is involved, as might be the case if the insurer had sought enforcement of the policy. *See Johnson*, 272 N.W.2d at 876–79 (Reynoldson, J., concurring); A. Widiss, *A Guide to Uninsured Motorist Coverage*, § 6.14 (1969). No issue of voluntariness is raised by American; nor should one be expected due to the unambiguous terms of its policy. *See Johnson*, 272 N.W.2d at 873.

Several jurisdictions, likely due to such considerations, have given the option of enforcing the arbitration provision to the insured. *See Commercial Union Insurance Co. v. Milazzo*, 265 So.2d 298 (La.App.1972); *Nassau Insurance Co. v. Ebin*, 81 Misc.2d 168, 364 N.Y.S.2d 95, aff'd 82 Misc.2d 513, 369 N.Y.S.2d 994 (Sup.Ct.1975); *Cavalier; cf. Country-Wide Insurance Co. v. Harnett*, 426 F.Supp. 1030, 1034 (S.D.N.Y.1977) (upholding constitutionality of distinction against an equal protection challenge). We find resolution of this case requires such a position be taken in this state and specifically reserve decision on the issue of whether the insurer may compel arbitration.

We therefore hold that an insured may compel enforcement of the arbitration clause in his or her insurance policy and except such proceedings and actions from operation of the general common law rule. This result is consistent with our case law regarding insurance contracts. The insurance contract, a contract of adhesion, is construed most favorably to the insured, *Connie's Construction Co. v. Fireman's Fund Insurance Co.*, 227 N.W.2d 207, 210 (Iowa 1975), and the policy language must be given meaning consistent with the objective and reasonable expectations of the insured. *Rodman v. State Farm Mutual Automobile Insurance Co.*, 208 N.W.2d 903, 906–07 (Iowa 1973). The language of the provision of the policy in question would definitely give an insured the impression that arbitration would resolve the controversy.

We further note that the rules of the American Arbitration Association, made applicable by the policy terms, do not provide for withdrawal, but do provide for proceeding in the absence of a party who has notice. *See American Arbitration Association Commercial Arbitration Rules*, Section 29. To permit withdrawal by the insurer would permit it to operate in defiance of its own policy terms. These rules would also bind any insured who initiates arbitration

and prevent subsequent unilateral withdrawal on his or her part.

We have relied, in part, on the statutes of other jurisdictions which allow enforcement of agreements to arbitrate future disputes. We do so only to indicate the changing legal attitude toward arbitration, reflective of modern circumstances and the developing sophistication of the arbitration process, as illustrated by the rules of the American Arbitration Association, which might justify modification of the common law. Being unable to anticipate all situations in which enforcement of anticipatory arbitration agreements may be sought, we leave the general common law rule in effect with the exception which we find necessitated by resolution of this case.

American unilaterally withdrew from arbitration following the close of evidence at the arbitration hearing. All that remained was rendition of the arbitrator's award. Given this state of the proceedings and the impermissible nature of American's withdrawal, we conclude that the arbitrator's award should be honored. The judgment of the district court must be reversed and the case remanded for further proceedings not inconsistent with this opinion.

REVERSED AND REMANDED.

All Justices concur except REYNOLDSON, C. J., who concurs specially, joined by HARRIS, J.; UHLENHOPP, J., who concurs specially; and ALLBEE, J., concurs in division I but dissents from division II and the result.

REYNOLDSON, Chief Justice (concurring specially).

My views on mandatory arbitration clauses in adhesion contracts were fully expressed in a special concurrence filed in *Johnson v. Fireman's Fund Insurance Co.*, 272 N.W.2d 870, 874–81 (Iowa 1978).

The majority of our Cost of Litigation Study Committee recommended adoption of the Uniform Arbitration Act. A minority report was filed. On October 15, 1979, this court issued a "Report of Action of the Supreme Court on the Report of the Cost of Litigation Study Committee" and forwarded it to the Senate Judiciary Committee and the House Judiciary and Law Enforcement Committee. We there said:

The court endorsed the recommendation of the Committee implementing the provisions of the Uniform Arbitration Act insofar as it applies to resolution of current and future disputes which the parties have voluntarily and knowingly agreed to submit to arbitration. Disputes under contracts generally regarded by courts as adhesion contracts should be excluded from mandatory arbitration.

Automobile insurance policies are classic adhesion contracts. I am therefore concerned that the following quoted portion of the majority opinion may be misinterpreted to indicate a court position contrary to that expressed to the legislature in the above report:

We conclude that there has been sufficient change in the national legal attitude, both judicial and legislative, toward agreements to arbitrate uninsured motorist claims as to justify revision of our position and enforcement of the agreement in the case before us.

I would delete this and similar language from the majority opinion.

HARRIS, J., joins this special concurrence.

UHLENHOPP, Justice (concurring specially).

I concur in reversal of the judgment for the reasons stated in my dissenting opinion in *Johnson v. Fireman's Fund Insurance Co.*, 272 N.W.2d 870, 883–86 (Iowa 1978).