IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
MAY 24, 2012 Session

## ROBERT MEARS v. KENDRA M. WILLIAMS, ET AL.

**Direct Appeal from the Circuit Court for Shelby County**
**No. CT-005170-05, Div. I      John R. McCarroll, Jr., Judge**

**No. W2011-02499-COA-R3-CV - Filed July 11, 2012**

This appeal focuses on State Farm's ability to claim an offset of uninsured motorist coverage for workers' compensation benefits paid to its insured. The trial court construed the case of *State Farm Insurance Company v. Schubert, et al.*, No. E2000-02054-COA-R3-CV, 2001 WL 584206 (Tenn. Ct. App. May, 31, 2001) so as to preclude offset. We reverse and we remand for further proceedings consistent with this opinion.

**Tenn. R. App. 3; Appeal as of Right; Judgment of the Circuit Court Reversed and Remanded**

ALAN E. HIGHERS, P.J., W.S., delivered the opinion of the Court, in which DAVID R. FARMER, J., and J. STEVEN STAFFORD, J., joined.

Sam R. Marney, III, Matthew S. Russell, Germantown, Tennessee, for the appellant, State Farm Mutual Automobile Insurance Company

Jeffrey D. Germany, M. Shawn Cardwell, Memphis, Tennessee, for the appellee, Robert Mears

**OPINION**

## I. FACTS & PROCEDURAL HISTORY

Robert Mears ("Plaintiff") filed a negligence complaint against uninsured motorist Kendra M. Williams[1] ("Defendant") on September 28, 2005, alleging personal injuries resulting from a motor vehicle accident in Shelby County, Tennessee, and seeking $468,500.00 in damages. An amended complaint was subsequently filed on October 21, 2005, to correctly state the date of the vehicle accident as September 29, 2004. Defendant, proceeding *pro se*, filed answers to both complaints on October 27, 2005.

On March 17, 2006, Memphis Light Gas & Water ("MLGW") filed a motion to intervene in the action claiming a subrogation lien for workers' compensation benefits paid for the benefit of Plaintiff in connection with the vehicle accident. MLGW attached its intervenor's complaint which stated that the vehicle accident had occurred in the course and scope of Plaintiff's employment with MLGW and, therefore, that MLGW had accepted his injury/claim as compensable and that it had paid $75,857.77 towards Plaintiff's medical treatment and that additional amounts may be paid in the future. The trial court permitted MLGW to intervene in the action, but MLGW later non-suited its action against Defendant, without prejudice, on December 15, 2006.

On November 14, 2006, State Farm Mutual Automobile Insurance Company ("State Farm"), as an unnamed defendant, filed an answer to Plaintiff's amended complaint. In its answer, State Farm acknowledged that it had issued a policy of automobile liability insurance containing uninsured motorist ("UM") coverage to Plaintiff, but it asserted, among other defenses, that it was entitled to a setoff of workers' compensation benefits paid by MLGW pursuant to its policy with Plaintiff, which provides that

> Any loss or expense paid or payable under any workers' compensation law, disability benefits law or any similar law will not be paid for again as damages under these [uninsured motorist] coverages.

On October 28, 2009, State Farm filed a "Motion to Determine Offset" in which it claimed that Plaintiff had settled his workers' compensation claim with MLGW for $109,237.59 with future medical expenses "left open[.]" State Farm asserted that it was not obligated to award a payout to Plaintiff until he proved damages beyond his workers' compensation recovery. The trial court, however, held State Farm's motion in abeyance pending a jury verdict

---

[1]Ms. Williams married during the pendency of this action and is now known as Mrs. Kendra M. Angarita. For continuity, we will refer to her as Ms. Williams.

establishing Plaintiff's damages, if any.

Following the resolution of a number of pretrial motions, a jury trial was held over six days in March and April 2011. After which, the jury returned a $225,000 verdict for Plaintiff including: $50,000 pain and suffering - past; $45,000 pain and suffering - future; $30,000 loss of the ability to enjoy life - past; $100,000 medical care - past. Plaintiff filed a motion for additur or a new trial, which the trial court denied.

On June 24, 2011, State Farm filed a "Supplemental Motion to Determine Offset" and a memorandum in support of such. State Farm again claimed that it was entitled to an offset for workers' compensation paid to Plaintiff. The trial court allowed the parties additional time to provide legal memoranda supporting their respective positions regarding the requested offset, and a full hearing was held on State Farm's motion on July 13, 2011. On October 27, 2011, the trial court entered an order denying State Farm's motion to determine offset, finding that based upon the case of *State Farm Insurance Company v. Schubert, et al.*, No. E2000-02054-COA-R3-CV, 2001 WL 584206 (Tenn. Ct. App. May, 31, 2001), State Farm was entitled to no offset. State Farm timely appealed.[2]

## II. ISSUE PRESENTED

State Farm presents the following issue for review:

1.    Whether the trial court erred in denying State Farm the policy offset against Robert Mears' damages for any loss or expense paid under the workers' compensation law.

For the following reasons, we reverse the decision of the trial court, and we remand for further proceedings consistent with this opinion.

## III. STANDARD OF REVIEW

"'Insurance contracts like other contracts should be construed so as to give effect to the intention and express language of the parties.'" ***Schubert***, 2001 WL 584206, at *3 (quoting *Blaylock and Brown Constr., Inc. v. AIU Ins. Co.*, 796 S.W.2d 146, 149 (Tenn. Ct. App. 1990)). The construction of an unambiguous written instrument is a question of law. ***Provident Washington Ins. Co. v. Reese***, 373 S.W.2d 613, 617 (Tenn. 1964) (citing *Oman v. Tenn. Cent. Ry. Co.*, 370 S.W.2d 563 (Tenn. 1963); *Godson v. MacFadden*, 39 S.W.2d 287 (Tenn. 1931)). We review the trial court's conclusions of law *de novo* on the record with no

---

[2]On January 9, 2012, this Court entered an Order directing entry of a final judgment. The record was supplemented to adjudicate matters previously unresolved.

presumption of correctness. ***NSA DBA Benefit Plan, Inc. v. Conn. Gen. Life Ins. Co.***, 968 S.W.2d 791, 795-96 (Tenn. Ct. App. 1997) (citing *Union Planters Nat'l Bank v. Am. Home Assur. Co.*, 865 S.W.2d 907, 912 (Tenn. Ct. App. 1993)).

## IV.  DISCUSSION

"As the [S]upreme [C]ourt has noted, '[i]n one sense' uninsured motorist coverage places the insured's insurance carrier 'in the role of a liability carrier for the uninsured motorist.'" ***Clark v. Shoaf***, 302 S.W.3d 849, 855 (Tenn. Ct. App. 2008) (quoting *Cavalier Ins. Corp. v. Osment*, 538 S.W.2d 399, 403 (Tenn. 1976)).  But, UM coverage "'does not actually insure the uninsured motorist.  It insures the insured and assures him of some recovery when the other parties do not have liability insurance.'" ***Id.*** (quoting *Thompson v. Parker*, 606 S.W.2d 538, 540 (Tenn. Ct. App. 1980)).  "Through the uninsured motorist act, the General Assembly intended to provide '*protection*' to the insured under the insured's own policy of insurance." ***Id.*** (quoting *Brewer v. Richardson*, 893 S.W.2d 935, 937 (Tenn. 1995)) (emphasis in original).  This protection, though, is not without condition, and, to recover, the insured must fulfill certain statutory requirements. ***Id.*** at 856.

Additionally, the UM statutes "do not permit duplicate recovery of benefits." ***Id.*** (citing Tenn. Code Ann. §§ 56-7-1205 & 1206(k); *State Auto. Mut. Ins. Co. v. Cummings*, 519 S.W.2d 773, 775 (Tenn. 1975)).  "The uninsured motorist insurance carrier is entitled to a credit to offset its liability by any recovery received by the insured from whatever source that would result in a duplication of the amount to be collected under the uninsured motorist coverage." ***Id.*** (citing Tenn. Code Ann. § 56-7-1206(k); *Thompson v. Parker*, 606 S.W.2d 538, 540 (Tenn. Ct. App. 1980)).  The sole issue on appeal in this case is whether the trial court erred in concluding that the case of *State Farm Insurance Company v. Schubert*, issued by the Eastern Section of this Court in 2001, precludes UM carrier State Farm, in the present case, from securing a setoff of workers' compensation benefits to Plaintiff.  To resolve this issue, we begin by examining *Schubert*.

In *Schubert*, plaintiffs obtained judgments against an uninsured motorist totaling $330,000, including $260,000 for personal injuries and $70,000 for lost consortium.  2001 WL 584206, at *1.  The injured plaintiff received $89,518.08 in workers' compensation benefits. ***Id.***  Before the trial court, State Farm argued that it was required to pay plaintiffs only $10,481.92–the $100,000 UM coverage less the $89,518.08 workers' compensation benefits. ***Id.***  The trial court agreed with State Farm, but following an examination of the insurance policy at issue, the Eastern Section of this Court reversed and it required State Farm to pay the full $100,000 policy limit. ***Id.***

The insurance policy provision at issue in *Schubert* is identical to the provision at issue in the instant case:

> Any loss or expense paid or payable under any worker's compensation law . . . will not be paid again as damages under [the uninsured motorist] coverages.

*Id.* In considering the *Schubert* plaintiffs' argument that State Farm was obligated to pay to them the full coverage limit of $100,000, the Eastern Section primarily considered the cases of *Sims v. Stewart*, No. W1998-00560-COA-R3-CV, 1999 WL 1336056 (Tenn. Ct. App. W.S. Dec. 15, 1999) *perm. app. denied* (Tenn. June 19, 2000) and *Hudson v. Hudson Mun. Contractor*, 898 S.W.2d 187 (Tenn. 1995).

*Sims* involved the following UM provision:

> Damages payable under this coverage . . . shall be *reduced* by . . the amount paid or payable under any workers' compensation law.

*Id.* at *4 (quoting *Sims*, 1999 WL 1336056, at *3) (emphasis added). In *Sims*, the trial court determined that the insured's damages were $198,046.43 and from that amount it subtracted compensation benefits of $61,862.57, leaving a balance of $136,183.86. *Id.* Because the balance was greater than the $100,000 policy limit, the trial court reasoned that the insured was entitled to the full $100,000. *Id.* This Court, however, reversed, relying upon *Hudson*, which involved a UM provision similar to that in *Sims*:

> Any amount payable under . . . this insurance . . . shall be *reduced* by . . . the amount paid . . . under any workers' compensation law.

*Id.* at *4 (quoting *Hudson*, 898 S.W.2d at 188) (emphasis added). The *Hudson* Court had additionally reviewed the cases of *Terry v. Aetna Casualty and Surety Co.*, 510 S.W.2d 509 (Tenn. 1974)[3] and *Dwight v. Tennessee Farmers Mutual Insurance Co.*, 701 S.W.2d 621 (Tenn. Ct. App. 1985),[4] which "stood for the proposition 'that an insured party's *right to recover* under an uninsured motorist policy that contains a *setoff provision such as the one involved in this case* may be reduced by the amount that the insured has collected, or could

---

[3] *Terry* involved a UM offset provision similar to that in *Hudson*. **Hudson**, 898 S.W.2d at 189. The Court found that the offset provision was statutorily authorized and it held that because the insured had recovered more than $10,000 in workers' compensation benefits, and the UM policy limit was only $10,000, that the insured was entitled to nothing from the UM carrier. *Id.*

[4] *Dwight* also involved a UM offset provision similar to *Hudson*. **Hudson**, 898 S.W.2d at 189. The Court held that the insured's right to recover was reduced by the amount of workers' compensation benefits he could have recovered despite his failure to file for such benefits and the expiration of the time period in which to do so. *Id.*

collect, under the Workers' Compensation law.'" **Id.** (quoting *Hudson*, 898 S.W.2d at 189) (emphasis in original). Relying upon *Hudson*, the *Sims* Court determined that "the setoff is to be made against the insured's 'right to recover[.]'" **Id.** (citing *Sims*, 1999 WL 1336056, at *4). It then defined "right to recover" or "Damages payable" as the $100,000 policy limit less the workers' compensation benefits paid. In essence, it found that the trial court had erred in subtracting the workers' compensation benefits from the insured's total damages, rather than from the policy limit.

Turning to the policy at issue in *Schubert*, which, again, mirrors that in the instant case:

> Any loss or expense paid or payable under any workers' compensation law, disability benefits law or any similar law will not be paid for again as damages under these [uninsured motorist] coverages[,]

the *Schubert* Court reached "two firm conclusions: first, the policy language in the instant case is different from the offset language found in *Sims* and *Hudson*; and second, the language placed in the Schubert policy by State Farm does not mean that the UM coverage of $100,000 must be reduced by the workers' compensation benefits *in the instant case*." **Id.** at *4 (emphasis added). The Court articulated the "clear meaning" of the *Hudson* and *Sims* policy provisions: "the maximum amount that an insured would be entitled to recover under the UM coverage of the policy, i.e., the policy limit, would be "reduced" by any workers' compensation benefits." **Id.** at *5. However, it determined that this simply was not the meaning of the *Schubert*–and necessarily the instant–policy. **Id.** at *5. The Court specifically noted that the *Schubert* policy lacked the "reduc[tion]" language present in both *Sims* and *Hudson*, which "clearly state[d] how the insurer's liability is to be *calculated*." **Id.** (emphasis in original). Instead, the *Schubert* policy "focuse[d] on what the insurance company *will not pay*. It simply says that if its insured is entitled to recover compensation benefits, it, the insurance company, will not pay those benefits 'again.'" **Id.** (emphasis in original). Because the $330,000 verdict less the $89,518.18 workers' compensation benefits left a $170,481.92 balance, the Court determined that requiring State Farm to pay the full $100,000 policy limit would not "have the effect of paying the compensation benefits 'again.'" **Id.**

Here, State Farm argues that although the policy language at issue in both *Schubert* and in the instant case, is identical, that *Schubert* is distinguishable and that it does not preclude the offset that it seeks. Plaintiffs, however, contend that *Schubert* held the subject policy language to be statutorily inadequate to achieve an offset, and therefore, that State Farm's appeal of an issue previously adjudicated is frivolous, warranting sanctions.

Tennessee Code Annotated section 56-7-1205 provides that UM coverage "may include such terms, exclusions, limitations, conditions, and offsets, which are designed to avoid duplication of insurance and other benefits." "[T]he legislative purpose of [section 56-7-1205] . . . is to allow uninsured motorist carriers to limit their liability when an insured is able to collect monies elsewhere, no matter the source." *Green v. Johnson*, 249 S.W.3d 313, 322 (Tenn. 2008); *see also Giannini v. Proffitt*, No. W2011-00342-COA-R3-CV, 2012 WL 1478785, at *3-4 (Tenn. Ct. App. Apr. 27, 2012) (citing *Terry*, 510 S.W.2d at 513-14) (noting that Tennessee's UM statutes provide only "limited coverage" as their "purpose [is] to provide an insured motorist a right of recovery under the uninsured motorists provisions of his policy only up to the statutory required minimum."). In keeping with this intention, our Supreme Court has held that "other benefits" may include workers' compensation benefits. *See Hudson*, 898 S.W.2d at 188.

Plaintiff is correct that the *Schubert* Court distinguished the policy language at issue in *Schubert* and in this case from the policy language in both *Sims* and *Hudson* which was effective to reduce the insured's right to recover (i.e. policy limits) by the amount of workers' compensation benefits paid. However, our reading of *Schubert* does not support Plaintiff's contention on appeal that "The *Schubert* Court went on to hold, in effect, that by not using the reduction language of the policies in *Sims* and *Hudson*, State Farm did not fall within the parameters of *Sims* and *Hudson* and ultimately that State Farm was not entitled to an offset." It is true that the *Schubert* Court highlighted the absence of "reduction" language in the policy at issue. Thus, unlike in *Sims* and *Hudson*, State Farm was not allowed to automatically deduct the workers' compensation benefits from the amount it otherwise would have paid. However, it did not hold that the absence of "reduction" language precluded an offset, but rather it implied that a deduction was permissible only if the workers' compensation benefits and policy limit, together, were greater than the insured's damages. Thus, the *Schubert* Court found that because both State Farm's $100,000 policy limit and the $89,518.18 workers' compensation benefits could be encompassed within the $330,000 verdict, disallowing an offset would not force State Farm to pay "again" benefits payable under workers' compensation. *Schubert*, 2001 WL 584206, at *5.

Obviously, the policy language at issue here is different from that in *Sims* and *Hudson*. As stated by the *Schubert* Court, the "difference is of sufficient magnitude to render the holdings of *Sims* and *Hudson* inapplicable" to the facts of this case. *Id.* at *5. Because the policy between State Farm and Plaintiff contains no reduction language, State Farm is not entitled to *automatically* deduct the workers' compensation benefits paid to Plaintiff. Instead, it must first prove that its payment would parallel a payment from another source for which offset was contractually provided. Although the analysis here is the same as in *Schubert*, the figures in the instant case lead to a different result. Here, the alleged

compensation benefits paid ($114,314.53)[5] and policy limit ($250,000), together, are greater than the insured's damages ($225,000). In fact, the policy limit, alone, is greater than Plaintiff's damages. Accordingly, disallowing State Farm an offset of any workers' compensation benefits paid would necessarily require State Farm to pay such benefits "again," in violation of its bargain with Plaintiff.

In sum, we find that *Schubert* did not, as a matter of law, deem the policy language at issue insufficient to effectuate an offset of workers' compensation benefits. Moreover, Tennessee Code Annotated section 56-7-1205 does not mandate the inclusion of "reduction" language, nor does it prohibit the language included in the subject policy–that workers' compensation benefits "will not be paid for again." In contrast to the provisions of *Sims* and *Hudson*, the provision at issue here requires State Farm, when attempting to claim an offset, to first demonstrate that disallowing such would require it to "again" pay for benefits previously conferred by another source. We find that the instant policy is a valid offset provision under Tennessee Code Annotated section 56-7-1205, and accordingly, that State Farm is entitled to deduct, from Plaintiff's damages, any workers' compensation benefits paid to Plaintiff.[6]

## V. CONCLUSION

For the aforementioned reasons, we reverse the decision of the trial court and we remand for further proceedings consistent with this opinion. Costs of this appeal are taxed to Appellee, Robert Mears, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, P.J., W.S.

---

[5]A dispute exists regarding the amount of workers' compensation benefits paid by MLGW to Plaintiff. We express no opinion as to the amount of such benefits.

[6]On appeal, Plaintiff argues that State Farm has failed to draft a valid setoff provision, and therefore, that the collateral source rule applies to preclude a deduction of workers' compensation benefits paid. Finding a valid setoff provision, we need not consider the rule's application.